IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JOHN GALVAN, | ) Case No.: 1:23-cv-03158 |
| | ) Hon. Matthew F. Kennelly |
| *Plaintiff*, | ) Magistrate Judge Kim |
| | ) |
| v. | ) |
| | ) *Coordinated for Pre-trial Proceedings with* |
| VICTOR SWITSKI, et al. | ) *Nañez v. Switski, et al.,* 23 CV 3162 |
| | ) *Almendarez v. Siwtski, et al.,* 23 CV 3165 |
| *Defendants.* | ) |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS'
MOTION ON WAIVER OF ATTORNEY-CLIENT PRIVILEGE**

Plaintiffs John Galvan, Arthur Almendarez, and Francisco Nañez, by and through their attorneys, Loevy & Loevy, respectfully submit the following response to City Employee Defendants' ("Defendants") motion to find Plaintiffs waived attorney-client privilege with their former attorneys on certain topics. In support, Plaintiffs state as follows:

**INTRODUCTION**

Defendants' motion should be denied as it is premised on an overly broad interpretation of the scope of waiver of the attorney client privilege in a subsequent civil proceeding where a defendant has previously asserted an ineffective assistance of counsel ("IAC") claim during post-conviction proceedings. Plaintiffs do not dispute that when an actual communication has been disclosed or put at issue in an IAC claim, there has been a waiver to that communication. Indeed, that is why Plaintiffs agree that certain communications with their criminal defense attorneys were waived, such as Plaintiff Almendarez's communications with his criminal and appellate counsel related to calling Frank Partida as a witness at his criminal trial. But, Defendants' motion seeks to broaden and expand the scope of waiver to any general topic raised in an IAC petition even where

no particular communication is at issue, but rather, may only involve, for example, the attorneys' strategic decision. This is an overly broad interpretation of the law, and indeed, Plaintiffs' position adheres to the court's analysis in *Patrick v. City of Chicago*, 154 F. Supp. 3d 705 (N.D. Ill. 2015), which addressed this issue in another wrongful conviction case. As set forth below, the Court should deny Defendants' motion.

## RELEVANT BACKGROUND FACTS

Plaintiffs John Galvan, Arthur Almendarez, and Francisco Nañez ("Plaintiffs") allege that they were wrongfully convicted of murders they did not commit. They further allege that Defendants caused these wrongful convictions by coercing two witnesses into falsely identifying the Plaintiffs, and by manipulating each Plaintiff into falsely confessing to the murders through physical and psychological torture. All three Plaintiffs, and one of the witnesses, immediately recanted these false statements, telling their loved ones, and, in some cases, the respective courts, about how Defendants abused and tortured them into false statements. Nevertheless, each Plaintiff was convicted and sentenced to life in prison. They spent the next three decades fighting to prove their innocence. In so doing, the Plaintiffs submitted multiple post-conviction petitions asserting several grounds to overturn their convictions, including claims that they did not have effective assistance of counsel. Plaintiffs were ultimately exonerated in 2022, on grounds unrelated to their trial counsel's representation, and filed their Section 1983 lawsuits less than a year later.

Through a largely successful and lengthy meet-and-confer process, Plaintiffs and Defendants have mostly reached agreement on the scope of any waiver of attorney-client privilege. Plaintiffs have agreed that where communications with counsel were expressly disclosed or put at issue in a post-conviction pleading (such as by attaching a letter between client and counsel or attesting to a communication in an affidavit), then waiver exists in this civil action. Exhibit 1

2

(Group Exhibit) at 1C (October 30, 2023 Email); 1G (May 14, 2024 Rule 37.2 Letter); 1J (June 24, 2024 Email). For the seven categories of communications that remain, dkt. 131 at 2, Plaintiffs' IAC claims did not disclose or put at issue any communications with counsel but rather dealt with their criminal and/or appellate counsels' strategic decisions (or lack of strategic decisions). Accordingly, the attorneys' mental processes only are at issue—not any communication between counsel and Plaintiff. That is why Defendants' assertion of a broad waiver is incorrect and this Court should deny the motion.

## ARGUMENT

### I. Attorney Client Privilege Extends to Communications Unless Waived Expressly or By Implication

"The attorney-client privilege is one of the oldest recognized privileges for confidential communications[.]" *Swidler & Berlin v. United States*, 524 U.S. 399, 403 (1998) (citing *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981)); *Hunt v. Blackburn*, 128 U.S. 464, 470 (1888)). Its purpose is "to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice...." *Upjohn Co.,* 449 U.S. at 389. Still, like any other privilege, it may be waived.

Waiver of the attorney-client privilege can be either express or implied. *Pyramid Controls, Inc. v. Siemens Indus. Automations, Inc.*, 176 F.R.D. 269, 272 (N.D. Ill. 1997). Express waiver occurs when a party discloses an otherwise privileged *communication* with their attorney. *Garcia v. Zenith Elecs. Corp.*, 58 F.3d 1171, 1175 n.1 (7th Cir. 1995). Implied waiver generally occurs when "a client asserts claims or defenses that put his or her attorney's advice 'at issue' in the litigation." *Guster-Hines v. McDonald's USA, LLC*, 2024 WL 942540, at *6 (N.D. Ill. Mar. 5, 2024) (quoting *CSI Worldwide, LLC v. TRUMPF, Inc.*, 2023 WL 5830788, at *5 (N.D. Ill. Sept. 8, 2023)). But, "[t]he 'at issue' waiver doctrine is limited and 'should not be used to eviscerate the

3

attorney-client privilege.'" *Cage v. Harper*, 2019 WL 6911967, at *1 (N.D. Ill. Dec. 19, 2019) (citing *Silverman v. Motorola, Inc.*, 2010 WL 2697599 at *4 (N.D. Ill. July 27, 2010); *see also LG Electronics v. Whirlpool Corp.*, 2009 WL 3294802 (N.D. Ill. 2009)). Merely asserting a claim or defense to which attorney-client communications are relevant, without more, does not constitute a waiver of attorney-client privilege. *Cage*, 2019 WL 6911967, at *1. The privileged party must affirmatively put at issue the specific *communication* to which the privilege attaches before the privilege will be deemed waived. *Id.*; *United States v. Capital Tax Corp.*, 04 CV 4138, 2011 WL 1399258 (N.D. Ill. 2011); *Beneficial Franchise Co., Inc. v. Bank One, N.A.*, 205 F.R.D. 212, 216 (N.D. Ill. 2001).

Implied waiver of the attorney-client privilege occurs "where a party voluntarily injects either a factual or legal issue into the case, the truthful resolution of which requires an examination of the confidential communications." *Pyramid,* 176 F.R.D. at 272 (N.D. Ill. 1997). The implied waiver doctrine ultimately is based on considerations of fairness: that is, a party may not use privilege as a tool for manipulation of the truth-seeking process. *Patrick*, 154 F. Supp. 3d at 711 (quoting *Bittaker v. Woodford*, 331 F.3d 715, 719 (9th Cir. 2003).); *see also, e.g.*, *United States v. Palivos*, 2010 WL 3190714, at *7 (N.D. Ill. Aug. 12, 2010) ("the court grants the motion to find the attorney-client privilege waived as to conversations between Breen and Palivos insofar as those communications are necessary to litigation of the ineffective assistance claim" and not otherwise); *McCullough v. Hanley*, 2019 WL 3776962, at *12 (N.D. Ill. Aug. 12, 2019) ("When a privilege holding party will not or does not use the disclosed information affirmatively to influence a decisionmaker, no subject-matter waiver is found because unfairness is lacking.").

II. **Plaintiffs Did Not Waive Privilege over the Seven Topics at Issue Merely by Asserting Claims of Ineffective Assistance of Counsel in their Post-Conviction Petitions as They Did Not Put Specific Communications at Issue**

Defendants argue that Plaintiffs waived attorney client privilege over the seven identified topics because Plaintiffs included the topic as a reason their trial and appellate counsel were ineffective. Defendants are mistaken that simply listing a topic in an IAC claim without more will automatically result in waiver of the attorney client privilege. Actual *conversations* must be disclosed or at issue in order for waiver to apply. *See Patrick*, 154 F. Supp. 3d at 715 (explaining that "[t]he conversations Plaintiff voluntarily disclosed in the [state court] Petition are not privileged pursuant to Federal Rule of Evidence 502" in subsequent federal court litigation); *see also Cage*, 2019 WL 6911967, at *2 ("[A]t issue waiver occurs when a party 'affirmatively put[s] at issue the specific communication, document, or information to which the privilege attached'") (quoting *Dexia Credit Local v. Rogan*, 231 F.R.D. 268, 275 (N.D. Ill. 2004)).

In their post-conviction proceedings, Plaintiffs disclosed certain specific communications they had with their then-attorneys over subjects discussed in their ineffective assistance of counsel claims. When they did so, they waived the privilege. But if there are not specific communications disclosed or put at issue in an IAC claim, there should be no waiver. This limit on the scope of waiver in the IAC context makes sense given the importance of maintaining confidentiality over counsels' communication with clients, particularly in the criminal defense context. It should not extend, as Defendants contend, to any topic or issue raised in an IAC claim, as many deal only with an attorneys' mental process and do not relate to any privileged communications at all. The Court should deny Defendants' attempt to find waiver over Topics 1-7.

Here, Plaintiffs brought ineffective assistance of counsel claims in their post-conviction proceedings which, among other things, raised their prior counsel's failure to: competently use

5

evidence related to an alternate suspect (all Plaintiffs); interview and call friendly witness Frank Partida (Plaintiff Galvan); and failure to call alibi witness Eva Nañez (Plaintiff Almendarez). However, unlike in *Patrick*, the Plaintiffs did not refer to or place any specific communications at issue or disclose any communications in their briefing or testimony related to these subjects. *Patrick*, 154 F. Supp. 3d at 709 (Patrick attached a letter to his appellate counsel describing his trial counsel's communications with him about testifying at his trial and also attached an affidavit describing his communication with trial counsel about alibi witnesses). That is for good reason. Plaintiffs' former counsel's alleged failures did not so much have to do with their advice, conversations they had with Plaintiffs, or knowledge of the facts. Instead, the decisions not to call certain witnesses or use evidence were strategic calls – which Plaintiffs alleged were not sound strategic choices. *See Strickland v. Washington*, 466 U.S. 668, 689 (1984). Regardless, the content of any communications were not "necessary to litigation of the ineffective assistance claim," *Palivos*, 2010 WL 3190714, at *7, and they certainly do not indicate a broad waiver to be applied in a separate civil rights case.

"Courts in this District have emphasized that 'subject matter waiver is reserved for rare cases in which a party attempts to use privileged information as both a sword and a shield in litigation.'" *Jokich v. Rush Univ. Med. Ctr.*, 2020 WL 1548955, at *3 (N.D. Ill. Apr. 1, 2020)(quoting *McCullough*, 2019 WL 3776962, at *12 (N.D. Ill. Aug. 12, 2019)); *see also Patrick*, 154 F. Supp. 3d at 715–16 ("[S]ubject matter waiver generally occurs *only* where the party holding the privilege seeks to gain some strategic advantage by disclosing favorable, privileged information, while holding back that which is unfavorable.") (emphasis added). That is not what Plaintiffs are doing here. Plaintiffs seek to preserve their communications with former counsel regarding topics that are not directly at issue in their civil rights cases. Defendants argue that these

6

topics are related to Plaintiffs' claims of innocence, which Defendants are sure to dispute by saying that Plaintiffs were, in fact, guilty. However, "Defendants can seek to establish through non-privileged communications and actions [this] [] defense[]; nothing about th[is] defense[] mandates that advice of counsel be used to prove [it]." *Cage*, 2019 WL 6911967, at *2. In other words, Defendants should not be able to pierce the privilege to embark on a fishing expedition to bolster their case.

Ultimately, *Patrick* stands for the proposition that attorney-client *communications* disclosed during the court of post-conviction proceedings results in a waiver in a future civil rights case. Plaintiff has agreed and faithfully applied *Patrick* and disclosed communications where there is waiver. *See* Exhibits 1G and 1J. And Plaintiffs will continue to agree to allow questioning where communications were placed at issue and disclosed during the post-conviction process. But, under *Patrick* and *Cage* and other case law, that is the limit of the implied waiver here, and the Defendants' attempt to apply a blanket waiver of the attorney-client privilege should be denied.

### III. Plaintiffs Did Not Waive Privilege over the Topics 1, 3, 4, 5, and 7 above by asserting a *Brady* Claim in this litigation

Similarly, Plaintiffs maintain that they did not implicitly waive communications with their trial and appellate attorneys about Topics 1, 3, 4, 5, and 7 by bringing *Brady* claims. Bringing a *Brady* claim does not "per force constitute[] a waiver of the attorney-client privilege." *Jackson v. Chicago*, 2006 WL 2224052, at *7 (N.D. Ill. Jul. 31, 2006). However, "waiver may occur if the plaintiff places 'the extent of [his] and his counsels' knowledge of information withheld during the initial criminal trial at issue." *Cannon v. Polk County/Polk County Sheriff*, 2013 WL 1840343, at *3 (D.Or. Apr. 30, 2013) (quoting *Jackson*, 2006 WL 2224052, at *7).

Plaintiffs' fabrication and suppression allegations do not put their communications with their criminal trial and appellate attorneys at issue. Plaintiffs allege that the Defendants caused

7

their wrongful convictions by, among other misconduct, coercing two witnesses into falsely identifying each of the Plaintiffs, coercing the Plaintiffs themselves into confessing to murders they did not commit, and suppressing evidence of Defendants' coercion of both the witnesses and Plaintiffs. *See* Dkt. 1 (Galvan Complaint) at ¶¶ 29-73.[1] The resolution of whether Defendants fabricated and withheld this evidence does not require examining Plaintiffs' communications with their criminal trial and appellate attorneys about how evidence of an eyewitness, alternate suspect, or Plaintiff Almendarez's alibi could have been best utilized in their criminal trials and appeals.

*Taylor v. City of Chicago*, 2015 WL 5611192 (N.D. Ill. Sept. 22, 2015), supports Plaintiffs' position. There, the court held that by virtue of bringing *Brady* claims, the plaintiff had implicitly waived the attorney-client privilege as to certain communications which bore on the *Brady* claims. *Id.* at *3-*7. Specifically, the plaintiff, Taylor, alleged that the defendants withheld exculpatory information that (1) Taylor was beaten into confessing to two murders and (2) the defendants had identified an alibi witness who allegedly confirmed Taylor could not have committed the murders. *Id.* at *1. Because Taylor's *Brady* claims were based specifically on whether his attorney knew about his treatment in police custody and facts pertaining to the alibi witness, Taylor had placed at issue the conversations he had with his attorney on these topics. *Id.* at *3-*7. Indeed, to the extent that *Taylor* applies here, Plaintiffs have agreed that they waived their attorney client privilege with respect to any conversations they had with their trial counsel about their interrogations and Defendants' treatment of them during their interrogations. *See* Exhibit 1G at 2-3.

By contrast, Plaintiffs' fabrication and *Brady* allegations are not based on what they and their attorneys knew about eyewitness Frank Partida, alternate suspect Lisa Velez, or Plaintiff

---

[1] Plaintiffs Nañez and Almendarez make similar allegations in their respective complaints.

8

Almendarez's alibi witness Eva Nañez—they are based on whether the Defendants coerced false testimony from witnesses and false confessions from the Plaintiffs and whether or not that information was hidden from the prosecutor and defense. Even if one were to consider Plaintiffs' *Brady* claims based on the same misconduct, the pertinent information is whether they and their attorneys knew that Defendants coerced the false identifications. Because the attorney-client communications regarding a friendly eyewitness, alternate suspect, and one Plaintiff's alibi witness are not the basis of any of Plaintiffs' claims, the communications are not at issue in this litigation. As such, there can be no implied waiver and Defendants' motion should be denied on this ground as well.

## IV. Plaintiffs Are not Using their Privilege to Obtain an Unfair Advantage

Contrary to the Defendants' assertion, Plaintiffs are not gaining an unfair advantage by maintaining their attorney client privilege over the limited subjects still at issue from their IAC claims. As a result, this Court should not find an implied waiver or that Plaintiff is wielding the privilege as "both sword and shield" to obtain an unfair advantage. *Patrick*, 154 F. Supp. 3d at 711 ("In practical terms, this means that parties in litigation may not abuse the privilege by asserting claims the opposing party cannot adequately dispute unless it has access to the privileged materials.").

To be clear, Plaintiffs are not seeking to rely on their communications with their criminal trial counsel or appellate counsel to prove their fabrication and/or *Brady* claims. Rather, the basis of those claims in this civil case (as opposed to an IAC claim) is centered around Defendants' investigation and interactions with witnesses, including Lisa Velez, as well as the efforts to coerce and manipulate witnesses into providing false and fabricated evidence that Defendants failed to disclose.

Finally, if the Court were to find implied waiver for fairness considerations, which for the reasons set forth above, it should not, any such waiver should be construed in the most limited manner possible rather than applying a broad subject matter waiver that is generally applied. *Patrick*, 154 F. Supp. 3d at 711-12 ("Courts that have imposed waivers under the fairness principle have tailored the scope of the waiver to the needs of the opposing party in litigating the claim in question. Only those documents or portions of documents relating to the claim asserted by the client should be disclosed.").

## CONCLUSION

For these reasons, Plaintiffs maintain that their assertion of attorney-client privilege over their communications with their criminal trial and appellate attorneys on the above subjects is proper, and this Court should deny Defendants' motion to the contrary.

Respectfully submitted,

**JOHN GALVAN, ARTHUR ALMENDAREZ, & FRANCISCO NAÑEZ**

/s/ Lauren Carbajal
*One of Plaintiffs' Attorneys*

Jon Loevy
Roshna Bala Keen
Heather Lewis Donnell
Josh Tepfer
Mark Loevy-Reyes
Lauren Carbajal
LOEVY & LOEVY
311 N. Aberdeen, Floor 3
Chicago, Illinois 60607
(312) 243-5900
*Attorneys for Plaintiff John Galvan, Arthur Almendarez, and Francisco Nañez*

**CERTIFICATE OF SERVICE**

  I, Lauren Carbajal, an attorney, certify that I caused to be served the above Response on all counsel of record via CM/ECF on July 15, 2024.

                     /s/ Lauren Carbajal
                     *One of Plaintiffs' Attorneys*