# EXHIBIT 47



Transcript of the Deposition of
# Jack Smeeton
**Case:** John Galvan v. Victor Switski, et al.
**Taken On:** November 13, 2024

Royal Reporting Services, Inc.
Phone:312.361.8851
Email:info@royalreportingservices.com
Website: www.royalreportingservices.com

John Galvan v. Victor Switski, et al.
Deposition of Jack Smeeton - Taken 11/13/2024

Page 1

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

John Galvan,                    )
                                )
            Plaintiff,          )
                                )
        v.                      ) No. 23 CV 3158
                                )
Victor Switski, et al.,         )
                                )
            Defendants.         )
_____  )
Arthur Almendarez,              )
                                )
            Plaintiff,          )
        v.                      ) No. 23 CV 3165
                                )
Victor Switski, et al.,         )
                                )
            Defendants.         )
_____  )
Francisco Nanez,                )
                                )
            Plaintiff,          )
                                )
        v.                      ) No. 23 CV 3162
                                )
Victor Switski, et al.,         )
                                )
            Defendants.         )

        The deposition of JACK SMEETON taken via
videoconference before Amie Panagakos, Registered
Professional Reporter, taken pursuant to the provisions
of the Illinois Code of Civil Procedure and the Rules of
the Supreme Court thereof pertaining to the taking of
depositions for the purpose of discovery, commencing at
11:32 a.m. on the 13th day of November, A.D., 2024.

John Galvan v. Victor Switski, et al.
Deposition of Jack Smeeton - Taken 11/13/2024

Page 2

APPEARANCES (via videoconference):

        LOEVY & LOEVY
        MR. JOSHUA A. TEPFER
        311 North Aberdeen Street
        3rd Floor
        Chicago, Illinois 60607
        Phone: 312.243.5900
        Email: josh@loevy.com

            On behalf of the Plaintiffs;

        BURNS NOLAND
        MS. DHAVIELLA N. HARRIS
        311 South Wacker Drive
        Suite 5200
        Chicago, Illinois 60606
        Phone: 312.982.0090
        Email: dharris@burnsnoland.com

            On behalf of the Defendant City of Chicago;

        HALE & MONICO LLC
        MR. BRIAN J. STEFANICH
        53 West Jackson Boulevard
        Suite 334
        Chicago, Illinois 60604
        Phone: 312.341.9646
        Email: bstefanich@halemonico.com

            On behalf of the Defendant Officers;

        O'CONNOR & BATTLE, LLP
        MS. MICHELE J. BRAUN
        111 West Jackson Boulevard
        Suite 1700
        Chicago, Illinois 60604
        Phone: 312.786.4600
        Email: mbraun@mokblaw.com

            On behalf of the Defendant Joel Leighton.


                        *   *   *   *   *   *


Royal Reporting Services, Inc.
312.361.8851

John Galvan v. Victor Switski, et al.
Deposition of Jack Smeeton - Taken 11/13/2024

Page 3

I N D E X

WITNESS                                                    PAGE

JACK SMEETON

     Direct Examination by Mr. Stefanich  ...      4

     Cross-Examination by Ms. Braun  .......      32

     Cross-Examination by Ms. Harris  .......      46

     Cross-Examination by Mr. Tepfer  .......      52

     Redirect Examination by Mr. Stefanich  .      57

     Recross-Examination by Mr. Tepfer  .....      59


E X H I B I T S

SMEETON DEPOSITION EXHIBIT                                 PAGE

     No. 1  .................................      10

     No. 2  .................................      13

     No. 3  .................................      16

     No. 4  .................................      21

     No. 5  .................................      23

     No. 6  .................................      26

     No. 7  .................................      30

     No. 8  .................................      58


(Exhibits retained by counsel.)

John Galvan v. Victor Switski, et al.
Deposition of Jack Smeeton - Taken 11/13/2024

Page 4

(Witness sworn.)

MR. STEFANICH: This is the deposition of Jack Smeeton in the case of John Galvan versus the City of Chicago, which is consolidated for discovery purposes with the Almendarez case and the Nanez case as well.

WHEREUPON:

JACK SMEETON,

having been first duly sworn, was examined and testified via videoconference as follows:

DIRECT EXAMINATION

BY MR. STEFANICH:

Q. Mr. Smeeton, my name is Brian Stefanich. I represent the police officers that were involved in this investigation. I'll be asking you some questions today. I don't anticipate this being a very long dep based on some of the documents that I've reviewed. But we'll get started, and if you ever need a break, we can take a break and, you know, that won't be an issue.

MR. TEPFER: Brian, why don't we just introduce ourselves so he knows who everyone represents.

MR. STEFANICH: Sure.

MR. TEPFER: I feel like this is helpful, especially on Zoom. My name is Josh Tepfer. As we said, this is a civil rights case. I represent the

Page 5

plaintiffs, which are John Galvan, Francisco Nanez, and Arthur Almendarez.

MS. HARRIS: I'm Dhaviella Harris. I represent the City of Chicago.

MS. BRAUN: I'm Michele Braun. I represent Joel Leighton, the assistant state's attorney.

MR. TEPFER: Thank you.

BY MR. STEFANICH:

Q. Mr. Smeeton, when did you first start practicing law?

A. 1974.

Q. At some point, were you an assistant state's attorney?

A. Yes.

Q. And when did you start -- Strike that.

Were you a Cook County state's attorney?

A. Yes.

Q. When did you start with the Cook County State's Attorney's Office?

A. '75.

Q. How long did you stay at the State's Attorney's Office?

A. About nine and a half years.

Q. Can you briefly walk me through your

Page 6

assignments at the State's Attorney's Office?

A. For the whole nine years?

Q. Yep.

A. Started out in 1st Municipal District prosecuting misdemeanors. I did that for, I think, about six months. Then I went to felony review, and I was in felony review for, I think, about five or six months. Then I went to -- I think I went right to a trial court then. It was about 13 months from joining the office to the felony trial court. Maybe there was a month of preliminary hearing after felony review, and then I went into a felony trial court.

Q. What trial court were you in?

A. My first assignment was at 13th at Michigan.

Q. Okay. Where did you go after 13th and Michigan?

A. 26th Street.

Q. Were you in a courtroom at 26th, assigned to a courtroom at 26th Street?

A. Yes, several.

Q. Okay. What judges were you assigned to? What courtrooms were you assigned to at 26th Street?

A. I think I started off with Judge Denchum [phonetic], and I think Maloney. That's what I recall.

Page 7

Q. Okay. After you were assigned to Judge Maloney's courtroom, where was your next stop at the State's Attorney's Office?

A. Richard Daley was a state's attorney and put together a gang prosecutions unit, and I was one of the original members of that gang prosecution unit.

Q. How long were you in the gang prosecution unit?

A. Oh, maybe four years, five years. I don't recall precisely. I was the deputy chief. I was second in command.

Q. Who was first in command?

A. Gregg Owen.

Q. Did you guys deal with any particular gangs or just all the gangs in Chicago essentially?

A. All of them.

Q. Did you go anywhere after the gang prosecutions unit in the State's Attorney's Office?

A. No, that's when I retired.

Q. And when you left the State's Attorney's Office, did you then go into private practice?

A. Yes.

Q. Were you a solo practitioner?

A. Yes.

4 (Pages 4 to 7)

Royal Reporting Services, Inc.
312.361.8851

John Galvan v. Victor Switski, et al.
Deposition of Jack Smeeton - Taken 11/13/2024

Page 8

Q. And what type of law did you do as a solo practitioner?

A. Strictly criminal.

Q. From your time as an assistant state's attorney, I'm going to go through a list of police officers and ask you if you remember any of these police officers from your time as an assistant state's attorney. Do you recall an individual by the name of Victor Switski?

A. No.

Q. Do you recall an individual by the name of James Hanrahan?

A. No.

Q. Do you recall an individual by the name of Leroy Almanza?

A. No.

Q. Do you recall an individual by the name of Marjorie O'Dea?

A. No.

Q. Do you recall an individual by the name of Thomas Jones?

A. No.

Q. Do you recall an individual by the name of Daniel Centracchio?

Page 9

A. No.

Q. Do you recall an individual by the name of James Capesius?

A. No.

Q. Do you recall an individual by the name of Tony Gin?

A. No.

Q. Do you recall a police officer by the name of Mark Scheithauer?

A. No.

Q. Do you recall a police officer by the name of Robert Gall?

A. No.

Q. Do you recall a police officer by the name of Jack Lumsden?

A. No.

Q. From your time as an assistant state's attorney, did you have any experience in arson cases?

A. Not that I recall, no. I don't recall.

Q. Okay. Do you recall, from your time as assistant state's attorney, ever getting like trained on the science of arson?

A. No, there was no formal training.

Q. You represented John Galvan in his criminal

Page 10

trial; is that correct?

A. So I'm told. I don't really recall. I recognized the name when I heard it, but I don't recall representing him.

Q. Okay. Let me -- I think a lot of this deposition will be me showing you things and seeing if it refreshes your recollection. Let me show you a picture of John Galvan and see if that refreshes your recollection at all. We'll mark this as Exhibit No. 1.

Mr. Smeeton, can you see my screen?

A. I can see your screen, yeah.

Q. And on my screen, do you see a copy of a Polaroid photograph?

A. No, I see a list of --

Q. Let me try again.

(A photograph was viewed.)

BY MR. STEFANICH:

Q. How about now?

A. Doesn't look familiar.

MR. TEPFER: Brian, what's the Bates?

MR. STEFANICH: Good question. So we'll mark this as Exhibit No. 1. This is going to be Bates-stamped Individual Defendants 154006, and this is a Polaroid photograph of John Galvan.

Page 11

BY MR. STEFANICH:

Q. Mr. Smeeton, does this refresh your recollection at all about Mr. Galvan?

A. No.

Q. In this photograph, Mr. Galvan appears to be smiling; is that correct?

MR. TEPFER: Objection to form.

A. I can't see, but I'll take your word for it. It looks like it, I guess.

Q. Prior to today's deposition, did you review any documents to prepare?

A. No.

Q. And I know you talked to my paralegal, and it sounds like you talked to Mr. Tepfer; is that correct?

A. I believe so.

Q. And did you talk to Mr. Tepfer yesterday?

A. I talked to somebody yesterday. Maybe it was him.

Q. Okay. What do you recall about that conversation yesterday?

A. Just that I don't recall anything about this case.

Q. Okay. And that's your testimony today, that you don't recall anything about this case?

5 (Pages 8 to 11)

Royal Reporting Services, Inc.
312.361.8851

John Galvan v. Victor Switski, et al.
Deposition of Jack Smeeton - Taken 11/13/2024

Page 12

A. No, I don't recall anything about this case. I was even given some of the basic facts, and it doesn't ring a bell. I probably had a thousand cases.

Q. Sure, I get it. When you were in felony review, were you familiar with a process of taking a Polaroid photograph of a suspect after they had made a statement?

A. I don't know that I would be around for that. I don't recall being around when pictures were taken.

Q. Who would take the pictures when you were in felony review, do you know?

A. No. Probably the police, wouldn't they?

Q. If it was a court-reported statement, would the court reporter take the photograph?

MR. TEPFER: I'm going to object to it mischaracterizes the testimony and the record.

BY THE WITNESS:

A. I don't recall.

Q. Okay.

A. I don't recall who would take the picture. It wouldn't be me.

Q. I'm going to show you another document that's in the file. Let's see.

(A document was viewed.)

Page 13

BY MR. STEFANICH:

Q. We'll mark this as Exhibit No. 2. Can you see a document on your screen now, Mr. Smeeton?

A. Yes.

Q. Okay. And the title of this document is called motion to suppress statements; is that correct?

A. Yes.

Q. And I don't know if you'll be able -- if you can see, but it looks like it's file stamped in 1987, correct, on the top?

A. Yes.

Q. And this was filed in the case of The People of the State of Illinois versus John Galvan, correct?

A. So I would assume.

Q. And if we go to page 2 of this document, it looks like that's signed by you; is that correct?

A. That's correct.

Q. And so you would have prepared this document for Mr. Galvan's case; is that correct?

A. Yes.

MR. TEPFER: That's just EP Galvan 48031 to 32; is that right?

MR. STEFANICH: 031 to 32, correct. Thanks, Josh.

Page 14

BY MR. STEFANICH:

Q. And in paragraph 2 on page 1 of this statement, you write that in the afternoon of June 8th, 1987, the defendant was interrogated by two male white Chicago Police detectives; is that correct?

A. That's what it says.

Q. And then in paragraph 3 of this document, you allege that prior to such interrogation, the defendant was essentially not advised of his Miranda rights; is that fair to say?

A. That's what it says.

Q. Okay. And then in paragraph 4 of this document, you allege that Mr. Galvan's statements were obtained as a result of psychological and mental coercion illegally directed against the defendant to the afore- -- the two aforementioned male white police detectives told defendant that if he would corroborate the statement of Michael Almendarez, that he would be released and allowed to go home; is that correct?

A. That's what it says.

Q. Does seeing this document refresh your recollection at all about Mr. Galvan's case?

A. No.

Q. And paragraph 5, I'll just go through that

Page 15

with you too. In paragraph 5, you allege that the defendant signed an oral and court-reported statement on June 8, 1987 in the presence of Assistant State's Attorney Joel Leighton, wherein he was informed of his rights by ASA Leighton; however, because of his emotional condition and poor educational background, the defendant was incapable of and unable to understand the full meaning of his Miranda rights, and any statement was therefore not the free and rational choice of the accused and was not made voluntarily, knowingly, and intelligently; is that correct?

A. That's what it says.

Q. The information that you included in this motion to suppress statements, is that information that you would have obtained from Mr. Galvan?

A. Yes.

MR. TEPFER: Objection, calls for speculation.

BY THE WITNESS:

A. Yes. That's -- I'm sure it was. That's how we practice law.

Q. And there is no allegation in this motion to suppress statements that Mr. Galvan was physically abused, correct?

A. Correct.

6 (Pages 12 to 15)

Royal Reporting Services, Inc.
312.361.8851

John Galvan v. Victor Switski, et al.
Deposition of Jack Smeeton - Taken 11/13/2024

Page 16

Q. And if Mr. Galvan had told you prior to you drafting this motion that he was physically abused, would you have included that in the motion?

A. Oh, yeah.

MR. TEPFER: One second.

Objection, calls for speculation.

Now you can answer. Sorry.

BY THE WITNESS:

A. Yes, I would have included it.

Q. Okay. I'm going to show you another document.

(A document was viewed.)

BY MR. STEFANICH:

Q. We'll mark this as Exhibit No. 3. Do you see that document on the screen now, Mr. Smeeton?

A. Yes.

Q. Okay. And this is a document that's titled motion to quash arrest and suppress evidence; is that correct?

A. Yes.

Q. And it looks like it was filed in April of 1988, correct?

A. Correct.

Q. And this was filed in Mr. Galvan's case, correct?

Page 17

A. It sure looks like it.

Q. Okay. And it looks like it's another document that you prepared; is that fair to say?

A. Yes.

MR. STEFANICH: And sorry, Josh. This is document Bates-stamped CCPD Subpoena Response 10186 through 10188.

BY MR. STEFANICH:

Q. And on page 3 of this document, that's your signature again at the end?

A. Yes.

Q. And I don't know if you would be able to -- if you can tell; it's okay obviously if you can't, but on page 3, it looks like paragraph A is crossed out. Do you know if that's something you would have done, or if you can tell if that's your cross-out style?

A. It doesn't look like anything I'd do.

Q. Okay. And same for paragraph 8, do you recognize that as something that you would have done to this motion?

A. No. I wouldn't file anything and have it scratched out like that.

Q. Okay. And motion to quash arrest and suppress evidence, this motion here, is based on the Fourth

Page 18

Amendment, correct?

A. Yes.

Q. And that would essentially -- Strike that.

Is it fair to say that this motion is then based on the allegation that there was no probable cause to arrest Mr. Galvan?

A. Yes, presumably so.

Q. Okay.

A. I don't recall what it was.

Q. Sure.

A. Must have been something.

Q. In paragraph 5, you allege that the arrest of the defendant was made without authority of a valid search warrant, correct?

A. Correct.

Q. And then in paragraph 6, you allege the conduct of defendant prior to arrest was such as would not reasonably be interpreted by the arresting officers as constituting probable cause that the defendant had committed or was about to commit a crime, correct?

A. Yes.

Q. Would -- Maybe this is a general like criminal procedure question, but would -- a motion to quash arrest and suppress evidence, would that be a vehicle

Page 19

where you could allege that a statement was obtained through physical coercion?

A. No.

Q. So that would just be the one we saw earlier, the motion to suppress statements?

A. Correct. This motion to quash arrest and evidence is pretty much a form motion.

Q. Okay. So it's not surprising or it wouldn't be surprising to you either way -- sorry. Strike that.

It wouldn't be surprising to you that there was no allegations of physical abuse in this motion to quash arrest and suppress evidence, correct?

A. No.

Q. Do you know an investigator by the name of Jack King?

A. You know, that name rings a bell, but I don't know why.

Q. Okay. Do you recall ever working on a case with Jack King?

A. Not in particular. But like I say, the name Jack King and a private investigator rings a bell with me, but that's about it.

Q. Do you know the last time that you spoke to Jack King?

7 (Pages 16 to 19)

Royal Reporting Services, Inc.
312.361.8851

John Galvan v. Victor Switski, et al.
Deposition of Jack Smeeton - Taken 11/13/2024

Page 20

A. I'm not sure I -- Well, I don't recall ever talking to him. I just remember the name. I may well have.

Q. Okay. When you were in private practice and doing a defense of a murder case, would it be your practice to hire private investigators to help you on cases?

A. Sometimes.

Q. Do you recall the names of any of the private investigators that you would use?

A. No. It's been a long time since I've done that.

Q. Sure. What types of tasks would you give investigators on a murder case?

A. Perhaps go out and interview witnesses that were listed in the police report, see if they still were around and if they were -- statements were similar to what the police allege.

Q. I'm going to show you another document real quick.

A. And to see if those witnesses knew any other possible witnesses that weren't listed in the police report.

Q. Okay. Would you also have investigators talk

Page 21

to potential witnesses that your client provided you the names of?

A. Oh, yeah.

(A document was viewed.)

BY MR. STEFANICH:

Q. Mr. Smeeton, can you see a document on my screen?

A. Yes.

Q. Okay. We'll mark this as Exhibit No. 4.

MR. STEFANICH: Josh, this is Bates-stamped CCPD Subpoena Response 002254 through 002255.

BY MR. STEFANICH:

Q. Mr. Smeeton, it looks like this report is from Investigator Jack King on Mr. Galvan's case. Do you see that at the top of the page here?

A. Yes.

Q. And it looks like the date it was dictated was October 17th, 1988; is that correct?

A. Yes, according to the document, yes.

Q. And according to the document, it seems like Mr. King is trying to interview some witnesses, a witness by the name of Frank Partida, Rene Rodriguez, and Jose Ramirez?

A. Yes.

Page 22

Q. Do those names, Frank Partida, Rene Rodriguez, and Jose Ramirez, refresh your recollection at all about this case?

A. No.

Q. And if I can call your attention to the document, the section of the interview with Frank Partida, Mr. King is writing or dictating at least that Mr. Partida stated that he was walking to a bus stop at approximately 4:00 in the morning after completing work as a bouncer at Chunky's located at approximately 2600 West 26th Street. Does that location refresh your recollection at all about this case?

A. No.

Q. Going down to the last sentence on this page, Mr. King writes or dictates that Mr. Partida reported that while attempting to walk Rene Rodriguez and Jose Ramirez home due to their inebriation, he observed a back side view of three male individuals walking eastbound in an alley, two of whom were wearing sleeveless white T-shirts. Did I read that correctly?

A. Yes, I believe you read that correctly.

Q. Does anything in that sentence refresh your recollection about this case at all?

A. No.

Page 23

Q. If you had worked with Jack King on Mr. Galvan's case, this would be a document that he would give to you?

MR. TEPFER: Speculation.

BY THE WITNESS:

A. I don't recall whether he did or didn't.

Q. Yeah, I guess I'm asking like, would this be the type of document, if you had hired him to interview witnesses, he would tell you the results of his interviews; is that correct?

MR. TEPFER: Same objection.

BY THE WITNESS:

A. I could only speculate. I don't know. I wish I had a memory of this. I just don't.

Q. I understand. We'll mark this as our next exhibit.

(A document was viewed.)

BY MR. STEFANICH:

Q. Mr. Smeeton, do you see the answer to people's motion for pretrial discovery on your screen?

A. Yes.

Q. And again, this is an answer, and that was in Mr. Galvan's criminal case, correct?

A. Correct.

8 (Pages 20 to 23)

John Galvan v. Victor Switski, et al.
Deposition of Jack Smeeton - Taken 11/13/2024

Page 24

Q. And this is Bates-stamped CCSAO 27120 through 27121. At page 2, this is a -- Sorry. This is a document that you prepared; is that correct?

A. Yes, I do believe.

Q. And on page 2 of this document, you have a list of witnesses, and you list Jack King as a potential witness; is that correct?

A. Yes, apparently.

Q. And you also list Carmen Baumgardner as a potential witness; is that correct?

A. Yes, apparently.

Q. Does the name Carmen Baumgardner ring a bell or refresh your recollection at all?

MR. TEPFER: I didn't hear an answer.

BY THE WITNESS:

A. No. The answer is no, I don't recall.

MR. TEPFER: Thank you.

BY MR. STEFANICH:

Q. Based on you listing Mr. King as a potential witness in this case, would it be fair to say that you, in fact, hired Mr. King as a private investigator for Mr. Galvan's case?

A. It appears I probably did.

Q. Okay, thank you. Do you know an assistant

Page 25

state's attorney or a former assistant state's attorney by the name of Michael Kelly?

A. No.

Q. Do you know a former assistant state's attorney by the name of Paul Sukuno [phonetic]?

A. No.

Q. I think my office sent you a subpoena for documents in this case earlier this year, and we asked for the trial file in this case. Do you recall that?

A. Yes.

Q. And is it true that you no longer have the trial file in this case from Mr. Galvan's case?

A. I don't have it anymore.

Q. Do you know what happened to it?

A. I disposed of it, I imagine. I disposed of a lot of my old files after they get seven to ten years old in general, I guess; otherwise, I wouldn't have room to put them all.

Q. In your trial file, would your general practice be to keep all of the discovery that the State tendered to you in your trial file?

A. Well, yes, of course.

Q. Okay. I want to -- I'll show you a portion of your opening statement in this case and see if that

Page 26

refreshes your recollection about anything and ask you a few questions on that.

(A document was viewed.)

BY MR. STEFANICH:

Q. Okay. We'll mark this as our next exhibit. I'm not sure what number we're on. Do you see a transcript on the screen, Mr. Smeeton?

A. I do.

MR. TEPFER: I think we're at Exhibit 6.

MR. STEFANICH: Thanks, Josh. We'll mark this as Exhibit 6.

BY MR. STEFANICH:

Q. This is a portion of your opening statement in Mr. Galvan's case.

MR. TEPFER: Are you just marking specific pages, or do you just want to mark the whole thing?

MR. STEFANICH: I'll probably just mark the whole thing. So it's Bates-stamped Galvan 1311 through Galvan 1323.

BY MR. STEFANICH:

Q. Your opening statement, Mr. Smeeton, starts on page 11, which is Galvan 1321. You start with, Good morning, ladies and gentlemen. My name is Jack Smeeton, and I represent John Galvan, the young man sitting over

Page 27

here; is that correct?

A. Yes, that's what it says.

MR. TEPFER: Can you make it any bigger?

MR. STEFANICH: Maybe. Is that better?

MR. TEPFER: Yeah, much better. Thank you.

THE WITNESS: Better for me too.

MR. STEFANICH: Sorry about that.

BY MR. STEFANICH:

Q. If we go to the next page, page 12, the part that I highlighted, you're summarizing what you expect the evidence to be. And you say, You are going to learn that prior to this alleged confession that he gave, that he spent almost ten hours in a police station handcuffed to a wall by himself in a cold room in shorts and a -- I'm not sure.

A. Dago T.

Q. I'm not sure what that is. Not allowed to talk to his family, not allowed to talk to a lawyer. But he was talked to by different police, threatened physically and mentally abused. His words were twisted, manipulated, between down and up against the wall, and the police came up with promises of leniency and kindness until he said what they wanted they wanted to hear, to give the police the only evidence that they

9 (Pages 24 to 27)

Case: 1:23-cv-03158 Document #: 241-47 Filed: 03/31/25 Page 12 of 33 PageID #:8634

John Galvan v. Victor Switski, et al.
Deposition of Jack Smeeton - Taken 11/13/2024

Page 28

have in this case was a statement that he signed to save himself. Do you see that?

A. Yes.

Q. And so I guess my question is, prior to making this opening statement -- Strike that.

Would you be expecting Mr. Galvan to testify based on what we just read in your opening statement?

MR. TEPFER: Objection, calls for speculation.

BY THE WITNESS:

A. I don't know how to answer that question. Would I what?

Q. Yeah, let me try to rephrase it. So in your opening statement, you're trying to summarize what the evidence will -- what you expect the evidence to be at the trial, correct?

A. Yes.

Q. Okay. And in this part of your opening statement in Mr. Galvan's case, it seems to me that you're summarizing what you expect the evidence to be regarding Mr. Galvan's statement to the police; is that fair to say?

A. Yes.

Q. Okay. And based on what we just went over for this opening statement, would you have made the decision

Page 29

or would Mr. Galvan have made the decision that he was, in fact, going to testify at his criminal trial?

A. I don't recall.

Q. Do you recall ever speaking with Mr. Galvan about whether or not he should testify at his criminal trial?

A. I don't recall.

Q. Do you have a general practice when you were a criminal defense attorney about how you would explain to your clients their right to testify?

A. Oh, absolutely.

Q. Can you walk me through that general practice?

A. Well, I certainly inform them they have a right to testify, and we go over the evidence and what is -- you know, beforehand and get an idea of whether or not they are likely to testify. Usually not in a criminal case in a general speaking. And then after the evidence is presented by the State, we would discuss whether or not my client should testify or not depending what evidence came in against him or her.

Q. Am I correct the decision on whether a criminal defendant testifies, that's a decision that the defendant gets to make with your advice, right? But he can ignore your advice and testify or not testify; is

Page 30

that fair to say?

A. Oh, absolutely. I make sure it's their choice.

Q. Did you ever tell Mr. Galvan not to testify about being physically abused because no jury was going to believe him against police officers?

MR. TEPFER: Objection, calls for speculation.

You can answer.

BY THE WITNESS:

A. Absolutely not.

Q. Did you ever tell Mr. Galvan that a Puerto Rican gangbanger has no chance in the trial to say that the cops beat him and that if Mr. Galvan was blond haired and blue-eyed, he would prevail?

A. No, that's ridiculous. Of course not.

MR. TEPFER: Same objection.

BY MR. STEFANICH:

Q. Do you remember in 2015 signing an affidavit for Mr. Galvan's post-conviction case?

A. No.

Q. I'll show that to you real quick to see if that refreshes your recollection. We'll mark this as Exhibit No. 7.

(A document was viewed.)

Page 31

BY MR. STEFANICH:

Q. This is a document titled affidavit of Jack Smeeton, Bates-stamped EP Galvan 00045029 through 45030. On page 2, is that your signature?

A. Yes, it is.

Q. And you can take a quick second or a quick moment to review this affidavit. And I just want you to review it, and I want to see if it refreshes your recollection at all.

A. Those are my words. I don't recall exactly signing that document, but I assume that it is.

Q. Okay. Do you recall how this affidavit came about?

A. No.

Q. Do you recall which one of Mr. Galvan's attorneys contacted you?

A. No.

Q. Do you recall anything about any conversation that you had with Mr. Galvan's attorneys in 2015?

A. Just that I didn't remember anything about the case. Still don't.

Q. Okay. After Mr. Galvan was convicted at his trial, would you have -- Strike that.

After Mr. Galvan was sentenced after his

10 (Pages 28 to 31)

John Galvan v. Victor Switski, et al.
Deposition of Jack Smeeton - Taken 11/13/2024

Page 32

conviction, would you have any further contact with Mr. Galvan?

A. I don't believe so.

MR. TEPFER: I'd object to speculation and form, but that's fine.

MR. STEFANICH: Those are all the questions I have. Some of the other defense attorneys might have some and then Mr. Tepfer might have some.

MS. BRAUN: Dhaviella, did you want to go first, or should I go?

MS. HARRIS: You can go.

MS. BRAUN: Brian, can you pull up Exhibit 2, the motion to suppress? And right before you do that --

CROSS-EXAMINATION

BY MS. BRAUN:

Q. Mr. Smeeton, do you recall anyone by the name of Joel Leighton?

A. No.

Q. When you were working over at the State's Attorney's Office, do you recall working with anyone by that name?

A. No.

Q. Okay.

(A document was viewed.)

Page 33

MS. BRAUN: If you can pull up the document. Thank you.

BY MS. BRAUN:

Q. Mr. Smeeton, you were shown Exhibit 2 by Brian a few moments ago. This is the motion to suppress that you said you filed back in 1987. Do you recall that?

A. I don't recall, but I see that I did.

Q. Okay. In paragraph 5, it states, Thereafter, defendant signed an oral and court-reported statement on June 8, 1987 in the presence of Assistant State's Attorney Joel Leighton wherein he was informed of his rights by ASA Leighton, correct?

A. Correct.

Q. It then goes on to say, However, because of his emotional condition and poor educational background, the defendant was incapable of and unable to understand the full meaning of his Miranda rights. Did I read that correctly?

A. Yes.

Q. Am I correct that nowhere in this motion do you state that Mr. Galvan advised ASA Leighton that he was unable to understand his Miranda rights?

A. I'm sorry. Would you repeat that question?

Q. Sure. Am I correct that nowhere in this

Page 34

motion do you state that Mr. Galvan told ASA Leighton that he did not understand the meaning of his Miranda rights?

A. Wait. I believe it says the defendant was incapable of and unable to understand the full meaning.

Q. Yes, but does it state that he told that to ASA Leighton?

A. No, it doesn't say that.

Q. Okay.

A. The statement that was written --

Q. I'm sorry?

A. Joel Leighton would have been a felony review assistant.

Q. Correct.

A. I assume if he had told him that, it would have been in the statement. So it must not have been.

Q. And am I correct that nowhere in this motion does it state that Mr. Galvan told ASA Leighton that the substance of his court-reported statement was not true?

A. Yeah, correct.

Q. And am I also correct that nowhere in this motion does it state that Galvan told ASA Leighton that he made up the story in his court-reported statement?

A. Correct.

Page 35

Q. And also am I correct that nowhere in this motion does it state that Galvan told ASA Leighton that he was asleep at his grandmother's house at the time of the fire?

A. No, it doesn't say it in the motion, and I assume it doesn't say it in the statement. I don't have the statement. You have it.

Q. Am I also correct that nowhere in the motion does it state that Galvan told ASA Leighton that the substance of his court-reported statement was untrue?

A. No, it doesn't say it in my motion, no.

Q. Had Mr. Galvan told you any of those -- any of the things that I just mentioned, would that be something you would include in the motion?

A. Well, yes, I guess.

MS. BRAUN: Brian, can you now pull up Exhibit 3, which was the motion to quash the arrest and suppress evidence?

MR. TEPFER: Just on the last question, I just object to calls for speculation.

(A document was viewed.)

BY MS. BRAUN:

Q. Mr. Smeeton, do you recall being shown Exhibit 3 earlier by Brian?

11 (Pages 32 to 35)

John Galvan v. Victor Switski, et al.
Deposition of Jack Smeeton - Taken 11/13/2024

Page 36

A. Yes, I do.

MS. BRAUN: Brian, if you could pull it up to paragraph 8.

BY MS. BRAUN:

Q. Mr. Smeeton, do you see paragraph 8 is one of the paragraphs that was crossed out in this document?

A. Yes.

Q. Okay. It reads that during the arrest and subsequent detention, the police and prosecution became aware of the existence of physical evidence, witnesses, and other evidence, all the direct and indirect fruits of the arrest and detention which connect defendant with a crime. Did I read that correctly?

A. Yes.

Q. Okay. Can you tell us what physical evidence or witnesses or other evidence you are referring to in this paragraph?

A. I have no idea. I don't know what the evidence was. I don't remember what the crime was.

Q. Can you tell us the basis for your allegation that the prosecution, in addition to the police, became aware of the existence of this other evidence?

A. No, not particularly. This is another form motion I would file and just add things that maybe were

Page 37

individual to a particular case.

Q. When you say it was a form motion, did the form motion typically include both the police and prosecution in paragraph 8?

A. Oh, yeah.

Q. So if you were just using a form motion, would there be any reason to delete either the police or prosecution from the paragraph?

A. I don't recall deleting it, and I don't know who deleted it. I don't recall doing that. I can't imagine that I did that.

Q. And if you left it in and used this form motion, would you typically just leave in the words, police and prosecution, in your motion?

A. Oh, yeah.

Q. Whether or not the prosecution was aware of this other evidence as well as the police?

A. Yeah. Like I say, it's just a form motion.

MS. BRAUN: Brian, can you pull up Exhibit 4, please.

MR. STEFANICH: Which one was that?

MS. BRAUN: The report of Jack King.

(A document was viewed.)

MS. BRAUN: If you could scroll down to the

Page 38

interview of Frank Partida.

BY MS. BRAUN:

Q. Do you recall being shown Exhibit 4 earlier by Brian?

A. Yes.

Q. And now we're looking at Mr. King's summary of his interview with Frank Partida. About the fifth line down towards the end of that line, it says Mr. Partida related that while walking to the bus stop, he encountered neighborhood acquaintances, Rene Rodriguez and Jose Ramirez, who were in his opinion extremely drunk. Did I read that correctly?

A. Yes.

MS. BRAUN: Brian, can you scroll down just a little bit more. A little bit more, please.

BY MS. BRAUN:

Q. In the paragraph starting, This investigator, the second line at the end of the line, it states, Mr. Partida insisted that he was unable to identify the three male youths that he viewed for a second or two shortly before the fire and feels that Rene Rodriguez and Jose Ramirez would also be unable to identify due to their poor view of the alley and drunken state. Did I read that correctly?

Page 39

A. Yes.

Q. In your opinion, do you believe that Mr. Partida's statements to your investigator would have benefited John Galvan at trial?

MR. TEPFER: Objection, calls for speculation.

BY THE WITNESS:

A. I don't know.

Q. Do you have any recollection as to why Mr. Partida was not called as a witness at John Galvan's trial?

A. No.

Q. Is there anything that you see in Mr. King's summary of his interview with Frank Partida that would cause you concern about calling him as a witness at Mr. Galvan's trial?

MR. TEPFER: Objection to form, calls for speculation. He doesn't remember anything about the trial.

BY MS. BRAUN:

Q. You can answer.

A. No, I don't recall anything about the trial or ...

Q. I understand. I understand. But I guess what I'm asking is, is there anything that you see in

12 (Pages 36 to 39)

John Galvan v. Victor Switski, et al.
Deposition of Jack Smeeton - Taken 11/13/2024

Page 40

Mr. King's summary of Partida's statement that would cause you concern in calling him as a witness at Mr. Galvan's trial?

MR. TEPFER: Same objection.

BY THE WITNESS:

A. I mean, I don't know if Mr. Partida testified on behalf of the State. This would be impeachment if he did.

Q. I can represent to you that he was not called by either side as a witness at trial. So I'm just trying to determine if --

A. Well, if he was called by the State, I would need to impeach him. This would be impeaching evidence.

Q. Would you, though, call him in your case-in-chief?

MR. TEPFER: Objection to form, calls for speculation.

BY THE WITNESS:

A. I doubt I would.

Q. Why is that?

A. Because he doesn't have anything to offer.

Q. If he's offering his opinion that he observed Rodriguez and Ramirez drunk, would that be beneficial to your case?

Page 41

MR. TEPFER: Objection, form, calls for speculation. He doesn't remember the case.

BY MS. BRAUN:

Q. You can answer.

A. I don't recall. I don't know.

Q. Okay.

A. Like I say, this would be impeachment if Partida -- What I'm speculating as all my years of experience, these statements would be impeachment of Mr. Partida had he taken the stand for the State and identified the defendants.

Q. Isn't it true that generally, you would retain an investigator to determine whether a witness would benefit your client's case?

A. Well, sure.

Q. And if that was the objective behind Mr. King interviewing Frank Partida and you see the results of that interview, again would that have caused you any concern about calling him as a witness in your case-in-chief?

MR. TEPFER: Objection, form, speculation, asked and answered.

BY THE WITNESS:

A. Reading this, it says this investigator

Page 42

presented Mr. Partida with statements and identifications he allegedly made to the police. So it must be in the police reports if Mr. Partida made an identification. Mr. King obviously gets a statement from Mr. Partida that he couldn't identify anybody. So it's impeachment of Mr. Partida if the State puts him on in this case. They didn't put him on. Why would I put him on? He doesn't know anything.

Q. Okay. In the paragraph above, he does state that he believed that Rodriguez and Ramirez were drunk. Would that have assisted your client's case?

MR. TEPFER: Objection, form, speculation.

BY THE WITNESS:

A. I don't know who those people are and what they have to do with the case, so I don't know.

MS. BRAUN: You can take the exhibit down, Brian. Thank you.

BY MS. BRAUN:

Q. You told us earlier that you no longer have your trial file for Mr. Galvan's case but that it would have included everything that the State provided to you. Did I get that right?

A. Yes.

Q. Typically in these criminal matters, would the

Page 43

State provide you with the felony review folder and what was contained in it?

A. No, just the statement, as I recall.

Q. If there was a memorandum prepared by the felony review ASA, would that have been shared with you?

A. I don't know what a memorandum is, what you're talking about.

Q. I'm sorry. If the felony review ASA drafted a memorandum to their supervisor for the supervisor to make the ultimate decision as to whether to approve charges, would that be included in the materials provided to you by the State?

A. I don't recall.

Q. Do you recall ever seeing memorandums like that?

A. No. I did six months of felony review myself. I don't recall preparing memorandums.

Q. Some did; some didn't.

A. So long ago, I don't remember.

Q. Had Mr. Galvan advised you that he was not told who ASA Leighton was when he initially met him, would that be something that you would bring out in your examination of him at trial?

MR. TEPFER: Objection, calls for speculation.

13 (Pages 40 to 43)

Royal Reporting Services, Inc.
312.361.8851

John Galvan v. Victor Switski, et al.
Deposition of Jack Smeeton - Taken 11/13/2024

Page 44

BY MS. BRAUN:

Q. You can answer.

A. The questions are kind of confusing. If he -- If -- I'm sorry. Will you repeat that question again?

Q. Sure. If Mr. Galvan told you that when he first met ASA Leighton he was unaware that ASA Leighton was an ASA, would that be something you would bring out at trial?

MR. TEPFER: Same objection.

BY THE WITNESS:

A. Well, yes, I suppose, but he gave a statement, the guy introduces himself, introduces himself in front of a court reporter as who he is. I hope that answers your question.

Q. If Mr. Galvan told you that ASA -- when he first met ASA Leighton when he walked into the room, that ASA Leighton was sitting at the table and started reading from a notepad that Detective Switski had, is that something that you would have brought up in direct examination of your client?

MR. TEPFER: Objection, calls for speculation.

BY THE WITNESS:

A. I don't know.

MR. TEPFER: Form.

Page 45

BY MS. BRAUN:

Q. If Mr. Galvan told you that Mr. Leighton then asked him if the statement that he was reading out loud was true or not and all that Galvan did was nod no, would that be something you would bring out in his direct -- in your direct examination of him at trial?

MR. TEPFER: Objection, calls for speculation, form.

BY THE WITNESS:

A. I just don't know.

Q. How about if your client told -- if Mr. Galvan told you that ASA Leighton left the room at least twice during the course of interviewing him, would that be something that you would bring out at trial?

MR. TEPFER: Objection, speculation, form.

BY THE WITNESS:

A. Probably not. What difference does it make if the guy leaves the room? Maybe he had to go to the bathroom.

MS. BRAUN: That's it for the questions right now. Thank you.

THE WITNESS: You're welcome.

Page 46

CROSS-EXAMINATION

BY MS. HARRIS:

Q. Mr. Smeeton, I just have a few questions. I understand that you do not recall this case or what might have been in the case file, correct?

A. That's correct.

Q. But would it be your practice back in -- Would it have been your practice that you would have reviewed whatever evidence or discovery that the State gave you --

A. Oh, yeah.

Q. -- to determine whether or not you received what you were expecting, I should say?

A. I'm sorry. What?

MR. TEPFER: Form.

BY MS. HARRIS:

Q. Would you have reviewed the evidence that the State gave you to make sure that you had received everything?

MR. TEPFER: Objection to form.

BY THE WITNESS:

A. I would review it. It wouldn't tell me whether I had everything or not.

Q. If you suspected that you were missing any

Page 47

documents from the State or any police reports that you expected, how would you go about that to have those documents tendered to you?

A. Oh, I would probably file another motion for supplemental discovery or bill of particulars or something. I'm not ...

Q. So if you believe you were missing any documents --

A. (Inaudible) I don't have all the police reports.

Q. I'm sorry. Can you say that last part again?

A. I said I don't know what would make me aware that I didn't have all the police reports.

Q. Okay. But if you believe you were missing something, there were methods for you to obtain that discovery, correct?

A. Sure, ask for it.

Q. Are there any other methods besides asking for it and filing a supplemental motion for discovery?

A. No.

Q. And was it your practice -- Strike that. Did you have any other cases or do you recall any cases from your career where you had co-defendants that were represented by the Cook County Public

14 (Pages 44 to 47)

John Galvan v. Victor Switski, et al.
Deposition of Jack Smeeton - Taken 11/13/2024

Page 48

Defender's Office?

A. Oh, yeah, sure.

Q. And did you have any other -- or recall any cases in your career where you had co-defendants that were represented by private counsel?

A. Oh, yes.

Q. And with the public defender or private counsel, did you ever consult with them throughout the case?

A. Always, sure.

Q. And so there was nothing to prevent you from speaking to, -- as in this case, there were -- A couple of the defendants were represented by the Cook County Public Defender's Office. There was nothing stopping you from having communication with them regarding your defense or any of the other matters, correct?

A. No. We're all in it together.

Q. And based off the exhibits that you have reviewed today, do you believe there -- do you know if there was anything that prevented you from actually speaking to Jose Ramirez yourself?

MR. TEPFER: Objection, form, calls for speculation.

Page 49

BY THE WITNESS:

A. I don't know that there is anything that prevented me from speaking to him myself or any need for me to speak to him myself.

Q. Was it your practice that if an investigator happened to speak to a -- Strike that.

Would you follow up with the witness personally after an investigator interviewed them?

A. Occasionally, I suppose, depending on what -- if it was a witness I was going to use, sure.

Q. And would you speak to your client about which witnesses to interview?

A. Oh, absolutely. We would go through the entire file and who we would call and who we wouldn't call and what's good points, what are bad points and make decisions together. That's how you practice law.

Q. But there was nothing that the police did to prevent you from speaking to any witnesses?

A. No.

Q. And are you familiar with what a complaint register is?

A. Complaint register?

Q. Yes, also known as a CR.

A. A what?

Page 50

Q. A CR, or a complaint register.

A. No.

Q. Are you familiar with the Office of Professional Responsibility?

A. Yes.

Q. Okay. And are you familiar that you could file complaints against officers that result in a complaint register, or a CR?

A. I suppose there is a method. I don't know that I ever did. You mean, personally?

Q. Have you ever --

A. Have I ever a filed a complaint against a police officer?

Q. Well, yeah. Let's start there. Have you?

A. No.

Q. Have you ever tried to obtain any complaint registers or any disciplinary history regarding an officer for any of your cases?

A. No.

Q. So are you aware of how to even obtain a CR, a complaint register?

A. Not off the top of my head, but I'm sure it wouldn't be too difficult to figure out.

Q. And to your recollection, you do not recall

Page 51

you or any co-defendants or co-defendant counsel issuing a subpoena for any complaint registers to use in your case?

A. No.

Q. And what was your typical -- I'm sorry, I'm jumping around here. Just to warn you. What was your typical method to interview witnesses? How would you go about that?

A. Method?

MR. TEPFER: Objection to form.

BY MS. HARRIS:

Q. Typical practice for interviewing witnesses.

A. Well, if I was going to call them as -- If I would potentially call them as witnesses, I would certainly talk to them in person and then prepare them for trial. Maybe my initial conversation would be on the telephone to decide whether or not they were going to be useful to my client.

Q. And based off the exhibits that were presented today, you don't know of any reason that prevented you from calling Frank Partida or Rene Rodriguez at trial?

MR. TEPFER: Calls for speculation.

BY THE WITNESS:

A. I have no recollection of why I would or

15 (Pages 48 to 51)

John Galvan v. Victor Switski, et al.
Deposition of Jack Smeeton - Taken 11/13/2024

Page 52

wouldn't call them. Except from what I read, it looks like those statements that were taken by Mr. King would have been used for impeachment. But apparently from what I read right there is that Mr. Partida, according to the police reports, made some identifications, and my investigator interviewed him and said they didn't make the identification. So it would have been for impeachment.

Q. And then I believe this will just be the last question, but in your conversations with a public defender, would you discuss which witnesses to interview and to present at trial?

A. No. I maybe would probably share information about who we intended to call and talk about cross-examination. I mean, you do it sort of as a team.

MS. HARRIS: Okay. I believe those are all my questions. Thank you very much, Mr. Smeeton.

CROSS-EXAMINATION

BY MR. TEPFER:

Q. Hi, Mr. Smeeton. I'm going to try to be really brief. I just have one category of questions. You are still practicing law, criminal law, correct?

A. I'm 90 percent retired. I have three cases.

Q. Fair enough. But you're still -- But you've

Page 53

been doing it for, what did we say, 40, 45 years or so?

A. 50.

Q. 50 years. Congratulations. I think I heard you say -- I'm not even sure if it was a response to a question -- that you probably tried a thousand cases?

A. Probably. 500 to 1,000. I was trying to think about that the other night how many I've been involved with. But yeah, it's a lot of cases, 50 years.

Q. You've been asked a lot of questions about your typical practice during the course of this deposition, correct?

A. Yes.

Q. Would you agree with the general proposition that all cases are different?

A. Oh, of course.

Q. And you would take different strategies in all of your cases depending on what the evidence showed, correct?

A. Exactly.

Q. So sometimes you would file pretrial motions when the facts supported it, right?

A. Yes.

Q. And sometimes you would pursue certain lines of defense when the facts supported it, right?

Page 54

A. Correct.

Q. Sometimes there may be evidence that you may have, but for strategic reasons you decided that it wouldn't be best to present that evidence in your case; is that correct?

A. Of course.

Q. Now, obviously a common defense is that the State isn't able to prove your client guilty beyond a reasonable doubt; is that correct?

A. That's how you win most of them.

Q. So that be would a very common defense, right?

A. Oh, yeah. Rarely is there an affirmative defense that works.

Q. I'm sorry?

A. Rarely is there an affirmative defense that works.

Q. Okay, fair. So there may be times where clients tell you or want to pursue an affirmative defense, but you discuss it with them and say for these reasons, I don't think it's a good idea. That's happened, right?

A. I try to pursue what the defendant tells me happened. I trust what they tell me, and I go by that unless it's so outrageous.

Page 55

Q. Fair. But one example of an affirmative defense is an alibi, right?

A. Oh, that would be -- an alibi is a good one.

Q. That's a good affirmative defense?

A. Yeah, usually if you got good alibi witnesses, that's not a bad one.

Q. Right. But if you talked to your client's alibi witnesses and for whatever reason you decide strategically you don't think they're going to hold up, that might be a reason why you decide not pursue an alibi defense; is that generally correct?

A. I suppose, sure, generally.

Q. Beyond affirmative defenses, I mean, one you talked about, the State can't prove beyond a reasonable doubt is usually the most common defense you would pursue, correct?

A. Yes.

Q. And one of the ways that the State can't prove someone beyond a reasonable doubt is just that there's doubt that they're the one who committed the offense charged, right?

A. Correct.

Q. If you were able to develop evidence or there was evidence that there was actually not a crime at all,

16 (Pages 52 to 55)

John Galvan v. Victor Switski, et al.
Deposition of Jack Smeeton - Taken 11/13/2024

Page 56

that would be another way to prove that the State couldn't prove the elements of the offense beyond a reasonable doubt, correct?

A. I guess, yes, you're probably correct.

Q. Okay. And so if you were able to develop that kind of evidence or provided certain evidence by the State that supported that there was no crime at all, that may be a defense you would pursue in a certain case, correct?

MS. BRAUN: Objection, calls for speculation.

BY THE WITNESS:

A. Well, correct. I mean, the State usually doesn't give you evidence exonerating their (indecipherable).

Q. Fair enough. Like one example would be sometimes there is medical disputes over the cause of death, right?

A. I suppose it could be. I never had that issue.

Q. You never had that issue. Okay. But in a case like a fire, one question is whether -- an arson means the fire was intentionally set, correct?

A. I think criminal code defines arson as an intentional act.

Page 57

Q. So conceivably, one defense could be if you were able to develop evidence or provided evidence that the fire was not intentionally set, that would be a defense that the State could not prove the elements of the offense beyond a reasonable doubt; is that correct?

MR. STEFANICH: Objection, form.

BY THE WITNESS:

A. Yes.

Q. Did you say yes?

A. I think, yes.

MR. TEPFER: Okay. That's all the questions I have. Thank you.

THE WITNESS: You're welcome.

REDIRECT EXAMINATION

BY MR. STEFANICH:

Q. I have a follow-up, I guess. I'm going to show you a portion of your closing argument in Mr. Galvan's case.

MR. TEPFER: May I ask a favor? What was the Bates stamp for Exhibit 7 for the affidavit? I'm just trying to have good notes.

MR. STEFANICH: EP Galvan 45029 through 45030.

MR. TEPFER: Really impressive that you've used like every production --

Page 58

MR. STEFANICH: Well --

MR. TEPFER: -- considering everything has been produced a thousand times. Well done, Brian.

MR. STEFANICH: Thanks. I'm trying to find like the best readable version.

THE WITNESS: Do you all know each other?

(A document was viewed.)

BY MR. STEFANICH:

Q. We'll mark this as Exhibit No. 8. This is a transcript of your closing argument in Mr. Galvan's case. It's Bates-stamped Galvan 1725 through 18027.

MR. TEPFER: Wait. Can you say that one more time?

MR. STEFANICH: Galvan 1725 through Galvan 1807.

MR. TEPFER: Got it. Thanks.

BY MR. STEFANICH:

Q. On page 2 here, you see the -- I guess the heading, closing argument by Mr. Smeeton; is that correct?

A. Yes.

Q. And then we go to page 6, which is stamped Galvan 1789. And in this part of the statement or opening -- or closing argument, you state, There is no question that somebody torched this building intentionally. There was no argument that it's

Page 59

happened. Do you see that?

A. Yes.

Q. Okay. So in Mr. Galvan's case, at least based on this portion of the closing argument, you're not disputing that the building was intentionally set on fire, correct?

A. Yes, apparently.

MR. STEFANICH: Those are all my questions.

MR. TEPFER: I guess I'll ask one more question.

RECROSS-EXAMINATION

BY MR. TEPFER:

Q. If you were provided evidence that would have, using your same terminology, questioned whether it was intentionally set, you may not have made that same argument, correct?

MS. BRAUN: Objection, calls for speculation.

MR. STEFANICH: Form.

BY THE WITNESS:

A. Well, if there was any evidence that it wasn't set intentionally, I certainly would have made that argument. But without recalling what the evidence was, apparently it was undisputed.

MR. TEPFER: Got it. That's all.

MR. STEFANICH: Nothing further from me.

17 (Pages 56 to 59)

Royal Reporting Services, Inc.
312.361.8851

John Galvan v. Victor Switski, et al.
Deposition of Jack Smeeton - Taken 11/13/2024

Page 60

MS. HARRIS: Nothing on behalf of the City.

MS. BRAUN: Nothing from me.

MR. STEFANICH: Mr. Smeeton, you get the opportunity to review the transcript if it's ordered and then make any changes that you want to make, or you can waive signature and trust that the court reporter took down everything that we said accurately.

MS. BRAUN: I trust Annie [sic].

MR. STEFANICH: Great. So you'll waive?

THE WITNESS: Yeah, I'll waive.

MR. STEFANICH: I'll order.

(Witness excused.)

18 (Page 60)

Royal Reporting Services, Inc.
312.361.8851

John Galvan v. Victor Switski, et al.
Deposition of Jack Smeeton - Taken 11/13/2024

Page 61

UNITED STATES OF AMERICA        )
NORTHERN DISTRICT OF ILLINOIS   )
EASTERN DIVISION                )    SS.
STATE OF ILLINOIS               )
COUNTY OF COOK                  )

I, Amie Panagakos, Certified Shorthand Reporter, do hereby certify that JACK SMEETON was first duly sworn by me to testify to the whole truth and that the above deposition was reported stenographically by me and reduced to typewriting under my personal direction.

I further certify that the said deposition was taken at the time and place specified and that the taking of said deposition commenced on the 13th day of November, A.D., 2024, at 11:32 a.m.

I further certify that I am not a relative or employee or attorney or counsel of any of the parties, nor a relative or employee of such attorney or counsel, nor financially interested directly or indirectly in this action.

John Galvan v. Victor Switski, et al.
Deposition of Jack Smeeton - Taken 11/13/2024

Page 62

Witness my signature on this 26th day of November, A.D., 2024.

AMIE PANAGAKOS, CSR, RPR
161 North Clark Street
Suite 3050
Chicago, Illinois  60601
Phone:  (312) 361-8851

CSR No. 084-004720

John Galvan v. Victor Switski, et al.
Deposition of Jack Smeeton - Taken 11/13/2024

Page 63

**A**

**A.D** 1:22 61:12 62:2
**a.m** 1:22 61:12
**Aberdeen** 2:3
**able** 13:8 17:12 54:8 55:23 56:5 57:2
**absolutely** 29:11 30:2,10 49:13
**abuse** 19:11
**abused** 15:23 16:2 27:20 30:5
**accurately** 60:7
**accused** 15:10
**acquaintances** 38:10
**act** 56:24
**action** 61:17
**add** 36:24
**addition** 36:21
**advice** 29:23,24
**advised** 14:9 33:21 43:20
**affidavit** 30:18 31:2,7,12 57:20
**affirmative** 54:12,15,18 55:1,4,13
**afore-** 14:16
**aforementioned** 14:16
**afternoon** 14:3
**ago** 33:5 43:19
**agree** 53:13
**al** 1:6,11,16
**alibi** 55:2,3,5,8 55:11
**allegation** 15:21 18:5 36:20
**allegations** 19:11

**allege** 14:8,13 15:1 18:12,16 19:1 20:18
**alleged** 27:12
**allegedly** 42:2
**alley** 22:19 38:23
**allowed** 14:19 27:17,18
**Almanza** 8:15
**Almendarez** 1:8 4:5 5:2 14:18
**Amendment** 18:1
**AMERICA** 61:1
**Amie** 1:19 61:4 62:9
**Annie** 60:8
**answer** 16:7 23:19,22 24:14 24:16 28:10 30:8 39:20 41:4 44:2
**answered** 41:22
**answers** 44:13
**anticipate** 4:15
**anybody** 42:5
**anymore** 25:13
**apparently** 24:8 24:11 52:3 59:7,22
**APPEARAN...** 2:1
**appears** 11:5 24:23
**approve** 43:10
**approximately** 22:9,10
**April** 16:20
**argument** 57:17 58:10,17,22,24 59:4,15,21
**arrest** 16:17 17:23 18:6,12 18:17,24 19:6

19:12 35:17 36:8,12
**arresting** 18:18
**arson** 9:18,22 56:21,23
**Arthur** 1:8 5:2
**ASA** 15:5 33:12 33:21 34:1,7 34:18,22 35:2 35:9 43:5,8,21 44:6,6,7,15,16 44:17 45:12
**asked** 25:8 41:21 45:3 53:9
**asking** 4:14 23:7 39:24 47:18
**asleep** 35:3
**assigned** 6:18,21 6:22 7:1
**assignment** 6:14
**assignments** 6:1
**assistant** 5:6,12 8:4,7 9:17,21 15:3 24:24 25:1,4 33:10 34:13
**assisted** 42:11
**assume** 13:14 31:11 34:15 35:6
**attempting** 22:16
**attention** 22:5
**attorney** 5:6,13 5:16 7:4 8:5,8 9:18,21 15:4 25:1,1,5 29:9 33:11 61:14,15
**Attorney's** 5:19 5:22 6:1 7:3,18 7:20 32:20
**attorneys** 31:16 31:19 32:7
**authority** 18:13

**aware** 36:10,22 37:16 47:12 50:20

**B**

**B** 3:10
**back** 22:18 33:6 46:7
**background** 15:6 33:15
**bad** 49:15 55:6
**based** 4:15 17:24 18:5 24:19 28:7,23 48:18 51:19 59:3
**basic** 12:2
**basis** 36:20
**Bates** 10:20 57:19
**Bates-stamped** 10:22 17:6 21:10 24:1 26:18 31:3 58:11
**bathroom** 45:19
**BATTLE** 2:17
**Baumgardner** 24:9,12
**beat** 30:13
**behalf** 2:6,11,16 2:21 40:7 60:1
**believe** 11:15 22:21 24:4 30:6 32:3 34:4 39:2 47:7,14 48:19 52:9,16
**believed** 42:10
**bell** 12:3 19:16 19:21 24:12
**beneficial** 40:23
**benefit** 41:14
**benefited** 39:4
**best** 54:4 58:5
**better** 27:4,5,6

**beyond** 54:8 55:13,14,19 56:2 57:5
**bigger** 27:3
**bill** 47:5
**bit** 38:15,15
**blond** 30:13
**blue-eyed** 30:14
**Boulevard** 2:13 2:18
**bouncer** 22:10
**Braun** 2:17 3:5 5:5,5 32:9,12 32:15 33:1,3 35:16,22 36:2 36:4 37:19,22 37:24 38:2,14 38:16 39:19 41:3 42:16,18 44:1 45:1,20 56:10 59:16 60:2,8
**break** 4:17,18
**Brian** 2:12 4:12 4:19 10:20 32:12 33:4 35:16,24 36:2 37:19 38:4,14 42:16 58:3
**brief** 52:21
**briefly** 5:24
**bring** 43:22 44:7 45:5,14
**brought** 44:19
**bstefanich@h...** 2:15
**building** 58:23 59:5
**BURNS** 2:7
**bus** 22:8 38:9

**C**

**call** 22:5 40:14 49:14,15 51:13 51:14 52:1,14

Royal Reporting Services, Inc.
312.361.8851

John Galvan v. Victor Switski, et al.
Deposition of Jack Smeeton - Taken 11/13/2024

Page 64

called 13:6 39:9 40:9,12
calling 39:14 40:2 41:19 51:21
calls 15:17 16:6 28:8 30:7 35:20 39:5,16 40:16 41:1 43:24 44:21 45:7 48:22 51:22 56:10 59:16
Capesius 9:3
career 47:23 48:4
Carmen 24:9,12
case 4:3,5,5,24 11:22,24 12:1 13:12,19 14:22 16:23 19:18 20:5,14 21:14 22:3,12,23 23:2,23 24:20 24:22 25:8,9 25:12,12,24 26:14 28:1,18 29:17 30:19 31:21 37:1 40:24 41:2,14 42:7,11,15,20 46:4,5 48:9,12 51:3 54:4 56:9 56:21 57:18 58:11 59:3
case-in-chief 40:15 41:20
cases 9:18 12:3 20:7 47:22,23 48:4 50:18 52:23 53:5,8 53:14,17
category 52:21
cause 18:5,19 39:14 40:2

56:16
caused 41:18
CCPD 17:6 21:10
CCSAO 24:1
Centracchio 8:24
certain 53:23 56:6,8
certainly 29:13 51:15 59:20
Certified 61:4
certify 61:5,9,13
chance 30:12
changes 60:5
charged 55:21
charges 43:11
Chicago 2:4,9 2:11,14,19 4:4 5:4 7:15 14:5 62:10
chief 7:10
choice 15:9 30:3
Chunky's 22:10
City 2:11 4:3 5:4 60:1
civil 1:20 4:24
Clark 62:9
client 21:1 29:19 44:20 45:11 49:11 51:18 54:8
client's 41:14 42:11 55:7
clients 29:10 54:18
closing 57:17 58:10,17,22 59:4
co-defendant 51:1
co-defendants 47:23 48:4 51:1
code 1:20 56:23

coercion 14:15 19:2
cold 27:14
command 7:11 7:12
commenced 61:11
commencing 1:21
commit 18:20
committed 18:20 55:20
common 54:7,11 55:15
communication 48:15
complaint 49:20 49:22 50:1,8 50:12,16,21 51:2
complaints 50:7
completing 22:9
conceivably 57:1
concern 39:14 40:2 41:19
condition 15:6 33:15
conduct 18:17
confession 27:12
confusing 44:3
Congratulatio... 53:3
connect 36:12
considering 58:2
consolidated 4:4
constituting 18:19
consult 48:8
contact 32:1
contacted 31:16
contained 43:2
conversation 11:20 31:18

51:16
conversations 52:10
convicted 31:22
conviction 32:1
Cook 5:16,18 47:24 48:13 61:3
cops 30:13
copy 10:12
correct 10:1 11:6,14 13:6 13:10,13,16,17 13:19,23 14:5 14:19 15:11,23 15:24 16:18,21 16:22,24 18:1 18:14,15,20 19:6,12 21:18 23:10,23,24 24:3,7,10 27:1 28:15 29:21 33:12,13,20,24 34:14,17,20,21 34:24 35:1,8 46:5,6 47:16 48:16 52:22 53:11,18 54:1 54:5,9 55:11 55:16,22 56:3 56:4,9,12,22 57:5 58:18 59:6,15
correctly 22:20 22:21 33:18 36:13 38:12,24
corroborate 14:17
counsel 3:22 48:5,8 51:1 61:14,15
County 5:16,18 47:24 48:13 61:3
couple 48:12

course 25:22 30:15 45:13 53:10,15 54:6
court 1:1,21 6:9 6:10,12,13 12:14 44:13 60:6
court-reported 12:13 15:2 33:9 34:19,23 35:10
courtroom 6:18 6:19 7:2
courtrooms 6:22
CR 49:23 50:1,8 50:20
crime 18:20 36:13,19 55:24 56:7
criminal 8:3 9:24 18:22 23:23 29:2,5,9 29:17,22 42:24 52:22 56:23
cross-examina... 3:5,6,7 32:14 46:1 52:15,18
cross-out 17:16
crossed 17:14 36:6
CSR 62:9,13
CV 1:5,10,15

**D**

D 3:1
Dago 27:16
Daley 7:4
Daniel 8:24
date 21:17
day 1:22 61:11 62:1
deal 7:14
death 56:17
decide 51:17

John Galvan v. Victor Switski, et al.
Deposition of Jack Smeeton - Taken 11/13/2024

Page 65

55:8,10
decided 54:3
decision 28:24
  29:1,21,22
  43:10
decisions 49:16
defendant 2:11
  2:16,21 14:4,8
  14:15,17 15:2
  15:7 18:13,17
  18:19 29:22,23
  33:9,16 34:4
  36:12 54:22
defendants 1:7
  1:12,17 10:23
  41:11 48:13
defender 48:7
  52:11
Defender's 48:1
  48:14
defense 20:5
  29:9 32:7
  48:16 53:24
  54:7,11,13,15
  54:19 55:2,4
  55:11,15 56:8
  57:1,4
defenses 55:13
defines 56:23
delete 37:7
deleted 37:10
deleting 37:9
Denchum 6:23
dep 4:15
depending
  29:19 49:9
  53:17
deposition 1:19
  3:11 4:2 10:6
  11:10 53:11
  61:7,9,11
depositions 1:21
deputy 7:10
Detective 44:18
detectives 14:5

14:17
detention 36:9
  36:12
determine 40:11
  41:13 46:12
develop 55:23
  56:5 57:2
dharris@bur...
  2:10
Dhaviella 2:7
  5:3 32:9
dictated 21:17
dictates 22:15
dictating 22:7
difference 45:17
different 27:19
  53:14,16
difficult 50:23
direct 3:4 4:10
  36:11 44:19
  45:6,6
directed 14:15
direction 61:8
directly 61:16
disciplinary
  50:17
discovery 1:21
  4:4 23:20
  25:20 46:9
  47:5,16,19
discuss 29:18
  52:11 54:19
disposed 25:15
  25:15
disputes 56:16
disputing 59:5
District 1:1,1
  6:4 61:1
DIVISION 1:2
  61:2
document 12:22
  12:24 13:3,5
  13:15,18 14:7
  14:13,21 16:10
  16:11,14,16

17:2,5,9 20:19
21:4,6,19,20
22:6 23:2,8,17
24:3,5 26:3
30:24 31:2,11
32:24 33:1
35:21 36:6
37:23 58:7
documents 4:16
  11:11 25:8
  47:1,3,8
doing 20:5 37:10
  53:1
doubt 40:19
  54:9 55:15,19
  55:20 56:3
  57:5
drafted 43:8
drafting 16:2
Drive 2:8
drunk 38:12
  40:23 42:10
drunken 38:23
due 22:17 38:22
duly 4:8 61:6

_____ E _____

E 3:1,10
earlier 19:4 25:8
  35:24 38:3
  42:19
eastbound 22:19
EASTERN 1:2
  61:2
educational
  15:6 33:15
either 19:9 37:7
  40:10
elements 56:2
  57:4
Email 2:5,10,15
  2:20
emotional 15:6
  33:15
employee 61:14

61:15
encountered
  38:10
entire 49:14
EP 13:21 31:3
  57:22
especially 4:23
essentially 7:15
  14:9 18:3
et 1:6,11,16
evidence 16:17
  17:24 18:24
  19:7,12 27:11
  27:24 28:14,14
  28:19 29:14,18
  29:20 35:18
  36:10,11,15,16
  36:19,22 37:17
  40:13 46:9,17
  53:17 54:2,4
  55:23,24 56:6
  56:6,13 57:2,2
  59:12,19,21
exactly 31:10
  53:19
examination 3:4
  3:8 4:10 43:23
  44:20 45:6
  57:14
examined 4:8
example 55:1
  56:15
excused 60:12
exhibit 3:11
  10:9,22 13:2
  16:13 21:9
  23:16 26:5,9
  26:11 30:23
  32:12 33:4
  35:16,24 37:19
  38:3 42:16
  57:20 58:9
exhibits 3:22
  48:18 51:19
existence 36:10

36:22
exonerating
  56:13
expect 27:10
  28:14,19
expected 47:2
expecting 28:6
  46:13
experience 9:18
  41:9
explain 29:9
extremely 38:11

_____ F _____

fact 24:21 29:2
facts 12:2 53:21
  53:24
fair 14:10 17:3
  18:4 24:20
  28:21 30:1
  52:24 54:17
  55:1 56:15
familiar 10:19
  12:5 49:20
  50:3,6
family 27:18
favor 57:19
feel 4:22
feels 38:21
felony 6:6,7,10
  6:11,12 12:4
  12:11 34:12
  43:1,5,8,16
fifth 38:7
figure 50:23
file 12:23 13:9
  17:21 25:9,12
  25:19,21 36:24
  42:20 46:5
  47:4 49:14
  50:7 53:20
filed 13:12 16:20
  16:23 33:6
  50:12
files 25:16

John Galvan v. Victor Switski, et al.
Deposition of Jack Smeeton - Taken 11/13/2024

Page 66

filing 47:19
financially 61:16
find 58:4
fine 32:5
fire 35:4 38:21 56:21,22 57:3 59:6
first 4:8 5:9 6:14 7:12 32:9 44:6 44:16 61:5
five 6:7 7:9
Floor 2:3
folder 43:1
follow 49:7
follow-up 57:16
follows 4:9
form 11:7 19:7 32:4 36:23 37:2,3,6,12,18 39:16 40:16 41:1,21 42:12 44:24 45:8,15 46:15,20 48:22 51:10 57:6 59:17
formal 9:23
former 25:1,4
four 7:9
Fourth 17:24
Francisco 1:13 5:1
Frank 21:22 22:1,6 38:1,7 39:13 41:17 51:21
free 15:9
front 44:12
fruits 36:11
full 15:8 33:17 34:5
further 32:1 59:24 61:9,13

——— G ———

Gall 9:12
Galvan 1:3 4:3 5:1 9:24 10:8 10:24 11:3,5 13:13,21 15:15 15:22 16:1 18:6 26:18,19 26:22,24 28:6 29:1,4 30:4,11 30:13 31:3,22 31:24 32:2 33:21 34:1,18 34:22 35:2,9 35:12 39:4 43:20 44:5,15 45:2,4,11 57:22 58:11,13 58:13,21
Galvan's 13:19 14:13,22 16:23 21:14 23:2,23 24:22 25:12 26:14 28:18,20 30:19 31:15,19 39:9,15 40:3 42:20 57:18 58:10 59:3
gang 7:5,6,7,17
gangbanger 30:12
gangs 7:14,15
general 18:22 25:17,19 29:8 29:12,17 53:13
generally 41:12 55:11,12
gentlemen 26:23
getting 9:21
Gin 9:6
give 20:13 23:3 27:24 56:13
given 12:2
go 6:15 7:17,21 8:5 13:15 14:19,24 20:15

27:9 29:14
32:9,10,11
45:18 47:2
49:13 51:7
54:23 58:20
goes 33:14
going 8:5 10:22 12:15,22 16:10 20:19 22:14 27:11 29:2 30:5 49:10 51:13,17 52:20 55:9 57:16
good 10:21 26:22 49:15 54:20 55:3,4,5 57:21
grandmother's 35:3
Great 60:9
Gregg 7:13
guess 11:9 23:7 25:17 28:4 35:15 39:23 56:4 57:16 58:16 59:9
guilty 54:8
guy 44:12 45:18
guys 7:14

——— H ———

H 3:10
haired 30:14
HALE 2:12
half 5:23
handcuffed 27:13
Hanrahan 8:12
happened 25:14 49:6 54:21,23 59:1
Harris 2:7 3:6 5:3,3 32:11 46:2,16 51:11 52:16 60:1

head 50:22
heading 58:17
hear 24:14 27:24
heard 10:3 53:3
hearing 6:11
help 20:6
helpful 4:22
Hi 52:20
highlighted 27:10
hire 20:6
hired 23:8 24:21
history 50:17
hold 55:9
home 14:19 22:17
hope 44:13
hours 27:13
house 35:3

——— I ———

idea 29:15 36:18 54:20
identification 42:4 52:7
identifications 42:2 52:5
identified 41:11
identify 38:19 38:22 42:5
ignore 29:24
illegally 14:15
Illinois 1:1,20 2:4,9,14,19 13:13 61:1,2 62:10
imagine 25:15 37:11
impeach 40:13
impeaching 40:13
impeachment 40:7 41:7,9 42:6 52:3,8

impressive 57:23
Inaudible 47:9
incapable 15:7 33:16 34:5
include 35:14 37:3
included 15:13 16:3,9 42:21 43:11
indecipherable 56:14
indirect 36:11
indirectly 61:16
individual 8:8 8:11,14,17,20 8:23 9:2,5 10:23 37:1
individuals 22:18
inebriation 22:17
inform 29:13
information 15:13,14 52:13
informed 15:4 33:11
initial 51:16
initially 43:21
insisted 38:19
intelligently 15:11
intended 52:14
intentional 56:24
intentionally 56:22 57:3 58:24 59:5,14 59:20
interested 61:16
interpreted 18:18
interrogated 14:4
interrogation

John Galvan v. Victor Switski, et al.
Deposition of Jack Smeeton - Taken 11/13/2024

Page 67

14:8
**interview** 20:15
21:21 22:6
23:8 38:1,7
39:13 41:18
49:12 51:7
52:11
**interviewed**
49:8 52:6
**interviewing**
41:17 45:13
51:12
**interviews** 23:10
**introduce** 4:19
**introduces**
44:12,12
**investigation**
4:14
**investigator**
19:14,21 21:14
24:21 38:17
39:3 41:13,24
49:5,8 52:6
**investigators**
20:6,10,14,24
**involved** 4:13
53:8
**issue** 4:18 56:19
56:20
**issuing** 51:1

—————————
**J**
—————————
**J** 2:12,17
**Jack** 1:19 3:3
4:2,7 9:15
19:15,19,21,24
21:14 23:1
24:6 26:23
31:2 37:22
61:5
**Jackson** 2:13,18
**James** 8:12 9:3
**Joel** 2:21 5:5
15:4 32:17
33:11 34:12

**John** 1:3 4:3 5:1
9:24 10:8,24
13:13 26:24
39:4,9
**joining** 6:9
**Jones** 8:21
**Jose** 21:23 22:2
22:16 38:11,22
48:21
**Josh** 4:23 13:23
17:5 21:10
26:10
**josh@loevy.co...**
2:5
**JOSHUA** 2:2
**Judge** 6:23 7:1
**judges** 6:21
**jumping** 51:6
**June** 14:3 15:3
33:10
**jury** 30:5

—————————
**K**
—————————
**keep** 25:20
**Kelly** 25:2
**kind** 44:3 56:6
**kindness** 27:23
**King** 19:15,19
19:21,24 21:14
21:21 22:7,15
23:1 24:6,19
24:21 37:22
41:16 42:4
52:2
**King's** 38:6
39:12 40:1
**knew** 20:21
**know** 4:18 11:13
12:8,11 13:8
17:12,15 19:14
19:16,17,23
23:13 24:24
25:4,14 28:10
29:15 36:18
37:9 39:7 40:6

41:5 42:8,14
42:15 43:6
44:23 45:10
47:12 48:19
49:2 50:9
51:20 58:6
**knowingly**
15:10
**known** 49:23
**knows** 4:20

—————————
**L**
—————————
**ladies** 26:23
**law** 5:10 8:1
15:20 49:16
52:22,22
**lawyer** 27:18
**learn** 27:11
**leave** 37:13
**leaves** 45:18
**left** 7:20 37:12
45:12
**Leighton** 2:21
5:6 15:4,5
32:17 33:11,12
33:21 34:1,7
34:12,18,22
35:2,9 43:21
44:6,6,16,17
45:2,12
**leniency** 27:22
**Leroy** 8:15
**Let's** 12:23
50:14
**line** 38:7,8,18,18
**lines** 53:23
**list** 8:5 10:14
24:6,6,9
**listed** 20:16,22
**listing** 24:19
**little** 38:15,15
**LLC** 2:12
**LLP** 2:17
**located** 22:10
**location** 22:11

**LOEVY** 2:2,2
**long** 4:15 5:21
7:7 20:11
43:19
**longer** 25:11
42:19
**look** 10:19 17:17
**looking** 38:6
**looks** 11:9 13:9
13:16 16:20
17:1,2,14
21:13,17 52:1
**lot** 10:5 25:16
53:8,9
**loud** 45:3
**Lumsden** 9:15

—————————
**M**
—————————
**making** 28:4
**male** 14:4,16
22:18 38:20
**Maloney** 6:24
**Maloney's** 7:2
**man** 26:24
**manipulated**
27:21
**Marjorie** 8:18
**mark** 9:9 10:9
10:21 13:2
16:13 21:9
23:15 26:5,10
26:16,17 30:22
58:9
**marking** 26:15
**materials** 43:11
**matters** 42:24
48:16
**mbraun@mo...**
2:20
**mean** 40:6 50:10
52:15 55:13
56:12
**meaning** 15:8
33:17 34:2,5
**means** 56:22

**medical** 56:16
**members** 7:6
**memorandum**
43:4,6,9
**memorandums**
43:14,17
**memory** 23:14
**mental** 14:14
**mentally** 27:20
**mentioned**
35:13
**met** 43:21 44:6
44:16
**method** 50:9
51:7,9
**methods** 47:15
47:18
**Michael** 14:18
25:2
**Michele** 2:17 5:5
**Michigan** 6:14
6:16
**Miranda** 14:9
15:8 33:17,22
34:2
**mischaracteri...**
12:16
**misdemeanors**
6:5
**missing** 46:24
47:7,14
**moment** 31:7
**moments** 33:5
**MONICO** 2:12
**month** 6:11
**months** 6:6,8,9
43:16
**morning** 22:9
26:23
**motion** 13:6
15:14,21 16:2
16:3,17 17:20
17:23,24 18:4
18:23 19:5,6,7
19:11 23:20

John Galvan v. Victor Switski, et al.
Deposition of Jack Smeeton - Taken 11/13/2024

Page 68

34:1,17,22
35:2,5,8,11,14
35:17 36:24
37:2,3,6,13,14
37:18 47:4,19
**motions** 53:20
**Municipal** 6:4
**murder** 20:5,14

**N**

N 2:7 3:1
**name** 4:12,23
  8:8,11,14,17
  8:20,23 9:2,5,8
  9:11,14 10:3
  19:14,16,20
  20:2 21:22
  24:12 25:2,5
  26:23 32:16,21
**names** 20:9 21:2
  22:1
**Nanez** 1:13 4:5
  5:1
**need** 4:17 40:13
  49:3
**neighborhood**
  38:10
**never** 56:18,20
**night** 53:7
**nine** 5:23 6:2
**nod** 45:4
**NOLAND** 2:7
**North** 2:3 62:9
**NORTHERN**
  1:1 61:1
**notepad** 44:18
**notes** 57:21
**November** 1:22
  61:12 62:2
**number** 26:6

**O**

**O'CONNOR**
  2:17
**O'Dea** 8:18

**object** 12:15
  32:4 35:20
**objection** 11:7
  15:17 16:6
  23:11 28:8
  30:7,16 39:5
  39:16 40:4,16
  41:1,21 42:12
  43:24 44:9,21
  45:7,15 46:20
  48:22 51:10
  56:10 57:6
  59:16
**objective** 41:16
**observed** 22:17
  40:22
**obtain** 47:15
  50:16,20
**obtained** 14:14
  15:15 19:1
**obviously** 17:13
  42:4 54:7
**Occasionally**
  49:9
**October** 21:18
**offense** 55:20
  56:2 57:5
**offer** 40:21
**offering** 40:22
**office** 5:19,22
  6:1,10 7:3,18
  7:21 25:7
  32:20 48:1,14
  50:3
**officer** 9:8,11,14
  50:13,18
**officers** 2:16
  4:13 8:6,7
  18:18 30:6
  50:7
**Oh** 7:9 16:4 21:3
  29:11 30:2
  37:5,15 46:11
  47:4 48:2,6
  49:13 53:15

54:12 55:3
**okay** 6:15,21 7:1
  9:20 10:5
  11:19,23 12:19
  13:5 14:12
  16:10,16 17:2
  17:13,18,23
  18:8 19:8,18
  20:4,24 21:9
  24:24 25:23
  26:5 28:17,23
  31:12,22 32:23
  33:8 34:9 36:8
  36:15 41:6
  42:9 47:14
  50:6 52:16
  54:17 56:5,20
  57:11 59:3
**old** 25:16,17
**opening** 25:24
  26:13,21 28:5
  28:7,13,17,24
  58:22
**opinion** 38:11
  39:2 40:22
**opportunity**
  60:4
**oral** 15:2 33:9
**order** 60:11
**ordered** 60:4
**original** 7:6
**outrageous**
  54:24
**Owen** 7:13

**P**

**page** 3:2,11
  13:15 14:2
  17:9,14 21:15
  22:14 24:2,5
  26:22 27:9,9
  31:4 58:16,20
**pages** 26:15
**Panagakos** 1:19
  61:4 62:9

**paragraph** 14:2
  14:7,12,24
  15:1 17:14,18
  18:12,16 33:8
  36:3,5,17 37:4
  37:8 38:17
  42:9
**paragraphs**
  36:6
**paralegal** 11:13
**part** 27:9 28:17
  47:11 58:21
**particular** 7:14
  19:20 37:1
**particularly**
  36:23
**particulars** 47:5
**Partida** 21:22
  22:1,7,8,15
  38:1,7,8,19
  39:9,13 40:6
  41:8,10,17
  42:1,3,5,6
  51:21 52:4
**Partida's** 39:3
  40:1
**parties** 61:14
**Paul** 25:5
**people** 13:12
  42:14
**people's** 23:19
**percent** 52:23
**person** 51:15
**personal** 61:8
**personally** 49:8
  50:10
**pertaining** 1:21
**Phone** 2:4,9,14
  2:19 62:11
**phonetic** 6:24
  25:5
**photograph**
  10:13,16,24
  11:5 12:6,14
**physical** 19:2,11

36:10,15
**physically** 15:22
  16:2 27:20
  30:5
**picture** 10:8
  12:20
**pictures** 12:9,10
**place** 61:10
**Plaintiff** 1:4,9
  1:14
**plaintiffs** 2:6 5:1
**please** 37:20
  38:15
**point** 5:12
**points** 49:15,15
**Polaroid** 10:13
  10:23 12:6
**police** 4:13 8:5,6
  9:8,11,14
  12:12 14:5,16
  20:16,18,22
  27:13,19,22,24
  28:20 30:6
  36:9,21 37:3,7
  37:14,17 42:2
  42:3 47:1,9,13
  49:17 50:13
  52:5
**poor** 15:6 33:15
  38:23
**portion** 25:23
  26:13 57:17
  59:4
**possible** 20:22
**post-conviction**
  30:19
**potential** 21:1
  24:6,10,19
**potentially**
  51:14
**practice** 7:21
  15:20 20:4,6
  25:20 29:8,12
  46:7,8 47:21
  49:5,16 51:12

John Galvan v. Victor Switski, et al.
Deposition of Jack Smeeton - Taken 11/13/2024

Page 69

53:10
practicing 5:10 52:22
practitioner 7:23 8:2
precisely 7:10
preliminary 6:11
prepare 11:11 51:15
prepared 13:18 17:3 24:3 43:4
preparing 43:17
presence 15:3 33:10
present 52:12 54:4
presented 29:18 42:1 51:19
presumably 18:7
pretrial 23:20 53:20
pretty 19:7
prevail 30:14
prevent 48:11 49:18
prevented 48:20 49:3 51:20
prior 11:10 14:8 16:1 18:17 27:12 28:4
private 7:21 19:21 20:4,6,9 24:21 48:5,7
probable 18:5 18:19
probably 12:3 12:12 24:23 26:17 45:17 47:4 52:13 53:5,6 56:4
procedure 1:20 18:23
process 12:5

produced 58:3
production 57:24
Professional 1:20 50:4
promises 27:22
proposition 53:13
prosecuting 6:5
prosecution 7:6 7:7 36:9,21 37:4,8,14,16
prosecutions 7:5 7:18
prove 54:8 55:14,18 56:1 56:2 57:4
provide 43:1
provided 21:1 42:21 43:12 56:6 57:2 59:12
provisions 1:20
psychological 14:14
public 47:24 48:7,14 52:10
Puerto 30:11
pull 32:12 33:1 35:16 36:2 37:19
purpose 1:21
purposes 4:4
pursuant 1:20
pursue 53:23 54:18,22 55:10 55:16 56:8
put 7:4 25:18 42:7,7
puts 42:6

_____ Q _____

quash 16:17 17:23 18:23 19:6,12 35:17

question 10:21 18:23 28:4,10 33:23 35:19 44:4,14 52:10 53:5 56:21 58:23 59:9
questioned 59:13
questions 4:14 26:2 32:6 44:3 45:20 46:3 52:17,21 53:9 57:11 59:8
quick 20:20 30:21 31:6,6

_____ R _____

Ramirez 21:23 22:2,17 38:11 38:22 40:23 42:10 48:21
Rarely 54:12,15
rational 15:9
read 22:20,21 28:7 33:17 36:13 38:12,24 52:1,4
readable 58:5
reading 41:24 44:18 45:3
reads 36:8
real 20:19 30:21
really 10:2 52:21 57:23
reason 37:7 51:20 55:8,10
reasonable 54:9 55:14,19 56:3 57:5
reasonably 18:18
reasons 54:3,20
recall 6:24 7:10 8:8,11,14,17 8:20,23 9:2,5,8

9:11,14,19,19 9:20 10:2,3 11:19,21,24 12:1,9,18,20 18:9 19:18 20:1,9 23:6 24:16 25:9 29:3,4,7 31:10 31:12,15,18 32:16,20 33:6 33:7 35:23 37:9,10 38:3 39:21 41:5 43:3,13,14,17 46:4 47:22 48:3 50:24
recalling 59:21
received 46:12 46:18
recognize 17:19
recognized 10:3
recollection 10:7,9 11:3 14:22 22:2,12 22:23 24:13 26:1 30:22 31:9 39:8 50:24 51:24
record 12:16
Recross-Exa... 3:9 59:10
Redirect 3:8 57:14
reduced 61:8
referring 36:16
refresh 11:2 14:21 22:2,11 22:22 24:13
refreshes 10:7,8 26:1 30:22 31:8
regarding 28:20 48:15 50:17
register 49:21 49:22 50:1,8

50:21
Registered 1:19
registers 50:17 51:2
related 38:9
relative 61:13 61:15
released 14:19
remember 8:6 20:2 30:18 31:20 36:19 39:17 41:2 43:19
Rene 21:22 22:1 22:16 38:10,21 51:21
repeat 33:23 44:4
rephrase 28:12
report 20:16,23 21:13 37:22
reported 22:15 61:7
reporter 1:20 12:14 44:13 60:6 61:5
reports 42:3 47:1,10,13 52:5
represent 4:13 4:24 5:3,5 26:24 40:9
represented 9:24 47:24 48:5,13
representing 10:4
represents 4:20
response 17:6 21:11 53:4
Responsibility 50:4
result 14:14 50:7
results 23:9

John Galvan v. Victor Switski, et al.
Deposition of Jack Smeeton - Taken 11/13/2024

Page 70

41:17
retain 41:12
retained 3:22
retired 7:19
  52:23
review 6:6,7,11
  11:10 12:5,11
  31:7,8 34:12
  43:1,5,8,16
  46:22 60:4
reviewed 4:16
  46:8,17 48:19
Rican 30:12
Richard 7:4
ridiculous 30:15
right 6:8 13:22
  29:10,14,23
  32:13 42:22
  45:20 52:4
  53:21,24 54:11
  54:21 55:2,7
  55:21 56:17
rights 4:24 14:9
  15:5,8 33:12
  33:17,22 34:3
ring 12:3 24:12
rings 19:16,21
Robert 9:12
Rodriguez 21:22
  22:1,16 38:10
  38:21 40:23
  42:10 51:21
room 25:17
  27:14 44:16
  45:12,18
RPR 62:9
Rules 1:20

—————
S
—————

S 3:10
save 28:1
saw 19:4
says 14:6,11,20
  15:12 27:2
  34:4 38:8

41:24
Scheithauer 9:9
science 9:22
scratched 17:22
screen 10:10,11
  10:12 13:3
  16:14 21:7
  23:20 26:7
scroll 37:24
  38:14
search 18:14
second 7:10 16:5
  31:6 38:18,20
section 22:6
see 10:8,10,11
  10:12,14 11:8
  12:23 13:2,9
  16:13 20:16,21
  21:6,14 23:19
  25:24 26:6
  28:2 30:21
  31:8 33:7 36:5
  39:12,24 41:17
  58:16 59:1
seeing 10:6
  14:21 43:14
sent 25:7
sentence 22:14
  22:22
sentenced 31:24
set 56:22 57:3
  59:5,14,20
seven 25:16
share 52:13
shared 43:5
Shorthand 61:4
shortly 38:21
shorts 27:14
show 10:7 12:22
  16:10 20:19
  25:23 30:21
  57:17
showed 53:17
showing 10:6
shown 33:4

35:23 38:3
sic 60:8
side 22:18 40:10
signature 17:10
  31:4 60:6 62:1
signed 13:16
  15:2 28:1 33:9
signing 30:18
  31:11
similar 20:17
sitting 26:24
  44:17
six 6:6,8 43:16
sleeveless 22:20
Smeeton 1:19
  3:3,11 4:3,7,12
  5:9 10:10 11:2
  13:3 16:14
  21:6,13 23:19
  26:7,21,23
  31:3 32:16
  33:4 35:23
  36:5 46:3
  52:17,20 58:17
  60:3 61:5
smiling 11:6
solo 7:23 8:1
somebody 11:17
  58:23
sorry 16:7 17:5
  19:9 24:2 27:7
  33:23 34:11
  43:8 44:4
  46:14 47:11
  51:5 54:14
sort 52:15
sounds 11:14
South 2:8
speak 49:4,6,11
speaking 29:4
  29:17 48:12,21
  49:3,18
specific 26:15
specified 61:10
speculate 23:13

speculating 41:8
speculation
  15:17 16:6
  23:4 28:8 30:7
  32:4 35:20
  39:5,17 40:17
  41:2,21 42:12
  43:24 44:21
  45:7,15 48:23
  51:22 56:10
  59:16
spent 27:13
spoke 19:23
SS 61:2
stamp 57:20
stamped 13:9
  58:20
stand 41:10
start 5:9,15,18
  26:22 50:14
started 4:17 6:4
  6:23 44:17
starting 38:17
starts 26:21
state 13:13
  25:20 29:18
  33:21 34:1,6
  34:18,22 35:2
  35:9 38:23
  40:7,12 41:10
  42:6,9,21 43:1
  43:12 46:9,18
  47:1 54:8
  55:14,18 56:1
  56:7,12 57:4
  58:22 61:2
state's 5:6,12,16
  5:19,21 6:1 7:3
  7:4,18,20 8:4,7
  9:17,21 15:3
  25:1,1,4 32:19
  33:10
stated 22:8
statement 12:7
  12:13 14:3,18

15:2,8 19:1
  25:24 26:13,21
  28:1,5,7,13,18
  28:20,24 33:9
  34:10,16,19,23
  35:6,7,10 40:1
  42:4 43:3
  44:11 45:3
  58:21
statements 13:6
  14:13 15:14,22
  19:5 20:17
  39:3 41:9 42:1
  52:2
states 1:1 33:8
  38:18 61:1
station 27:13
stay 5:21
Stefanich 2:12
  3:4,8 4:2,11,12
  4:21 5:8 10:17
  10:21 11:1
  13:1,23 14:1
  16:12 17:5,8
  21:5,10,12
  23:18 24:18
  26:4,10,12,17
  26:20 27:4,7,8
  30:17 31:1
  32:6 37:21
  57:6,15,22
  58:1,4,8,13,15
  59:8,17,24
  60:3,9,11
stenographica...
  61:7
stop 7:2 22:8
  38:9
stopping 48:14
story 34:23
strategic 54:3
strategically
  55:9
strategies 53:16
Street 2:3 6:17

Royal Reporting Services, Inc.
312.361.8851

John Galvan v. Victor Switski, et al.
Deposition of Jack Smeeton - Taken 11/13/2024

Page 71

6:19,22 22:11
62:9
**Strictly** 8:3
**Strike** 5:15 18:3
19:9 28:5
31:23 47:21
49:6
**style** 17:16
**subpoena** 17:6
21:11 25:7
51:2
**subsequent** 36:9
**substance** 34:19
35:10
**Suite** 2:8,13,18
62:10
**Sukuno** 25:5
**summarize**
28:13
**summarizing**
27:10 28:19
**summary** 38:6
39:13 40:1
**supervisor** 43:9
43:9
**supplemental**
47:5,19
**supported** 53:21
53:24 56:7
**suppose** 44:11
49:9 50:9
55:12 56:18
**suppress** 13:6
15:14,22 16:17
17:23 18:24
19:5,12 32:13
33:5 35:17
**Supreme** 1:21
**sure** 4:21 12:4
15:19 17:1
18:10 20:1,13
26:6 27:15,17
30:2 33:24
41:15 44:5
46:18 47:17

48:2,10 49:10
50:22 53:4
55:12
**surprising** 19:8
19:9,10
**suspect** 12:6
**suspected** 46:24
**Switski** 1:6,11
1:16 8:9 44:18
**sworn** 4:1,8 61:6

———————
**T**
———————
**T** 3:10 27:16
**T-shirts** 22:20
**table** 44:17
**take** 4:17 11:8
12:10,14,20
31:6 42:16
53:16
**taken** 1:19,20
12:9 41:10
52:2 61:10
**talk** 11:16 20:24
27:18,18 51:15
52:14
**talked** 11:13,14
11:17 27:19
55:7,14
**talking** 20:2
43:7
**tasks** 20:13
**team** 52:15
**telephone** 51:17
**tell** 17:13,16
23:9 30:4,11
36:15,20 46:22
54:18,23
**tells** 54:22
**ten** 25:16 27:13
**tendered** 25:21
47:3
**Tepfer** 2:2 3:7,9
4:19,22,23 5:7
10:20 11:7,14
11:16 12:15

13:21 15:17
16:5 23:4,11
24:14,17 26:9
26:15 27:3,5
28:8 30:7,16
32:4,8 35:19
39:5,16 40:4
40:16 41:1,21
42:12 43:24
44:9,21,24
45:7,15 46:15
46:20 48:22
51:10,22 52:19
57:11,19,23
58:2,12,14
59:9,11,23
**terminology**
59:13
**testified** 4:9 40:6
**testifies** 29:22
**testify** 28:6 29:2
29:5,10,14,16
29:19,24,24
30:4 61:6
**testimony** 11:23
12:16
**thank** 5:7 24:17
24:24 27:5
33:1 42:17
45:21 52:17
57:12
**Thanks** 13:23
26:10 58:4,14
**thereof** 1:21
**thing** 26:16,18
**things** 10:6
35:13 36:24
**think** 6:5,7,8,23
6:24 10:5 25:7
26:9 53:3,7
54:20 55:9
56:23 57:10
**Thomas** 8:21
**thousand** 12:3
53:5 58:3

**threatened**
27:19
**three** 22:18
38:20 52:23
**time** 8:4,7 9:17
9:20 19:23
20:11 35:3
58:12 61:10
**times** 54:17 58:3
**title** 13:5
**titled** 16:16 31:2
**today** 4:14 11:23
48:19 51:20
**today's** 11:10
**told** 10:2 14:17
16:1 34:1,6,15
34:18,22 35:2
35:9,12 42:19
43:21 44:5,15
45:2,11,12
**Tony** 9:6
**top** 13:10 21:15
50:22
**torched** 58:23
**trained** 9:21
**training** 9:23
**transcript** 26:7
58:10 60:4
**trial** 6:9,10,12
6:13 10:1 25:9
25:12,19,21
28:15 29:2,6
30:12 31:23
39:4,10,15,18
39:21 40:3,10
42:20 43:23
44:8 45:6,14
51:16,21 52:12
**tried** 50:16 53:5
**true** 25:11 34:19
41:12 45:4
**trust** 54:23 60:6
60:8
**truth** 61:6
**try** 10:15 28:12

52:20 54:22
**trying** 21:21
28:13 40:11
53:6 57:20
58:4
**twice** 45:12
**twisted** 27:20
**two** 14:4,16
22:19 38:20
**type** 8:1 23:8
**types** 20:13
**typewriting**
61:8
**typical** 51:5,7,12
53:10
**typically** 37:3,13
42:24

———————
**U**
———————
**ultimate** 43:10
**unable** 15:7
33:16,22 34:5
38:19,22
**unaware** 44:6
**understand** 15:7
23:15 33:16,22
34:2,5 39:23
39:23 46:4
**undisputed**
59:22
**unit** 7:5,6,8,18
**UNITED** 1:1
61:1
**untrue** 35:10
**use** 20:10 49:10
51:2
**useful** 51:18
**usually** 29:16
55:5,15 56:12

———————
**V**
———————
**v** 1:5,10,15
**valid** 18:13
**vehicle** 18:24
**version** 58:5

John Galvan v. Victor Switski, et al.
Deposition of Jack Smeeton - Taken 11/13/2024

Page 72

**versus** 4:3 13:13
**Victor** 1:6,11,16 8:9
**videoconference** 1:19 2:1 4:9
**view** 22:18 38:23
**viewed** 10:16 12:24 16:11 21:4 23:17 26:3 30:24 32:24 35:21 37:23 38:20 58:7
**voluntarily** 15:10

**W**

**Wacker** 2:8
**Wait** 34:4 58:12
**waive** 60:6,9,10
**walk** 5:24 22:16 29:12
**walked** 44:16
**walking** 22:8,18 38:9
**wall** 27:14,21
**want** 25:23 26:16 31:7,8 32:9 54:18 60:5
**wanted** 27:23,23
**warn** 51:6
**warrant** 18:14
**wasn't** 59:19
**way** 19:9 56:1
**ways** 55:18
**we'll** 4:16 10:9 10:21 13:2 16:13 21:9 23:15 26:5,10 30:22 58:9
**we're** 26:6,9 38:6 48:17
**wearing** 22:19

**welcome** 45:22 57:13
**went** 6:6,8,8,12 28:23
**weren't** 20:22
**West** 2:13,18 22:11
**white** 14:4,16 22:20
**win** 54:10
**wish** 23:13
**witness** 3:2 4:1 12:17 15:18 16:8 21:22 23:5,12 24:7 24:10,15,20 27:6 28:9 30:9 39:6,9,14 40:2 40:5,10,18 41:13,19,23 42:13 44:10,22 45:9,16,22 46:21 49:1,7 49:10 51:23 56:11 57:7,13 58:6 59:18 60:10,12 62:1
**witnesses** 20:15 20:21,22 21:1 21:21 23:9 24:6 36:10,16 49:12,18 51:7 51:12,14 52:11 55:5,8
**word** 11:8
**words** 27:20 31:10 37:13
**work** 22:9
**worked** 23:1
**working** 19:18 32:19,20
**works** 54:13,16
**wouldn't** 12:12 12:21 17:21 19:8,10 25:17

46:22 49:14 50:23 52:1 54:4
**write** 14:3
**writes** 22:15
**writing** 22:7
**written** 34:10

**X**

**X** 3:1,10

**Y**

**yeah** 10:11 16:4 21:3 23:7 27:5 28:12 34:20 37:5,15,18 46:11 48:2 50:14 53:8 54:12 55:5 60:10
**year** 25:8
**years** 5:23 6:2 7:9,9 25:16 41:8 53:1,3,8
**Yep** 6:3
**yesterday** 11:16 11:17,20
**young** 26:24
**youths** 38:20

**Z**

**Zoom** 4:23

**0**

**00045029** 31:3
**002254** 21:11
**002255** 21:11
**031** 13:23
**084-004720** 62:13

**1**

**1** 3:12 10:9,22 14:2
**1,000** 53:6

**10** 3:12
**10186** 17:6
**10188** 17:7
**11** 26:22
**11:32** 1:22 61:12
**111** 2:18
**12** 27:9
**13** 3:13 6:9
**1311** 26:18
**1321** 26:22
**1323** 26:19
**13th** 1:22 6:14 6:15 61:11
**154006** 10:23
**16** 3:14
**161** 62:9
**1700** 2:18
**1725** 58:11,13
**1789** 58:21
**17th** 21:18
**18027** 58:11
**1807** 58:13
**1974** 5:11
**1987** 13:9 14:4 15:3 33:6,10
**1988** 16:21 21:18
**1st** 6:4

**2**

**2** 3:13 13:2,15 14:2 24:2,5 31:4 32:12 33:4 58:16
**2015** 30:18 31:19
**2024** 1:22 61:12 62:2
**21** 3:15
**23** 1:5,10,15 3:16
**26** 3:17
**2600** 22:11
**26th** 6:17,18,19 6:22 22:11

62:1
**27120** 24:1
**27121** 24:2

**3**

**3** 3:14 14:7 16:13 17:9,14 35:16,24
**30** 3:18
**3050** 62:10
**311** 2:3,8
**312** 62:11
**312.243.5900** 2:4
**312.341.9646** 2:14
**312.786.4600** 2:19
**312.982.0090** 2:9
**3158** 1:5
**3162** 1:15
**3165** 1:10
**32** 3:5 13:21,23
**334** 2:13
**361-8851** 62:11
**3rd** 2:3

**4**

**4** 3:4,15 14:12 21:9 37:19 38:3
**4:00** 22:9
**40** 53:1
**45** 53:1
**45029** 57:22
**45030** 31:3 57:22
**46** 3:6
**48031** 13:21

**5**

**5** 3:16 14:24 15:1 18:12 33:8

John Galvan v. Victor Switski, et al.
Deposition of Jack Smeeton - Taken 11/13/2024

Page 73

**50** 53:2,3,8
**500** 53:6
**52** 3:7
**5200** 2:8
**53** 2:13
**57** 3:8
**58** 3:19
**59** 3:9

**6**

**6** 3:17 18:16
26:9,11 58:20
**60601** 62:10
**60604** 2:14,19
**60606** 2:9
**60607** 2:4

**7**

**7** 3:18 30:23
57:20
**75** 5:20

**8**

**8** 3:19 15:3
17:18 33:10
36:3,5 37:4
58:9
**8th** 14:3

**9**

**90** 52:23